SAMUEL NAGER, administrator, *vs.* ROBERT B. REID.

Bristol.    October 24, 1921. — November 26, 1921.

Present: RUGG, C.J., CROSBY, CARROLL, & JENNEY, JJ.

*Negligence,* Motor vehicle, Causing death, In use of highway, *Res ipsa loquitur.*
   *Evidence,* Presumptions and burden of proof, Admission, *Res gestae,* Competency,
   Absence of witness.   *Agency,* Admission by conduct of agent, Scope of authority.

At the trial of an action of tort against the owner of a motor truck for causing
   conscious suffering and the death of a child who was run into by the truck
   when it was being operated by an employee of the defendant, it appeared that,
   after the accident, the employee carried the child into a nearby building, placed
   him in charge of a man there, departed, and thereafter had not been seen by
   the defendant; that search had been made for him but he could not be found,
   and that he did not testify.  *Held,* that
      (1) The conduct of the employee was not competent evidence of an admission
   against the defendant;
      (2) The employee's conduct after the accident was not so connected with
   the accident as to be part of the *res gestae.*
Section 24 of G. L. c. 90, making it a criminal offence for the driver of an automobile
   to go away without stopping and making known his name, residence and the
   number of his vehicle after knowingly causing injury to a person, relates only
   to the operator and does not create any liability, criminal or civil, on the part
   of an owner who is not the operator.
At the trial of the action above described, there was evidence tending to show
   that the street upon which the accident occurred ran east and west, that at
   the place of the accident it was almost level and was straight for at least six
   hundred feet, that it was much travelled and that it bore a large volume of
   heavy trucking and other traffic; that just previous to the accident the decedent
   and other children were seen going west on the street about ten or fifteen yards
   from the defendant's truck.  A witness testified that the truck struck the
   decedent and stopped, leaving the child about ten feet behind it, but that he
   could not see what part of the truck struck the child.  There was no other
   evidence of the conduct of the child or of the driver of the truck.  *Held,* that
      (1) The doctrine, *res ipsa loquitur,* was not applicable;
      (2) The conduct of the driver of the truck was wholly conjectural, and the
   evidence did not warrant a finding for the plaintiff.

TORT for negligently causing conscious suffering and the death of Irving Nager, who was run over by a motor truck operated by

an employee of the defendant on Anawan Street in Fall River. Writ dated June 17, 1919.

In the Superior Court, the action was tried before *Dubuque*, J. Material evidence is described in the opinion. At the close of the evidence, the judge upon motion of the defendant ordered a verdict for the defendant and reported the case for determination by this court, judgment to be entered for the plaintiff in the sum of $3,000, if the plaintiff was entitled to go to the jury; otherwise, judgment to be entered for the defendant on the verdict.

*D. R. Radovsky*, for the plaintiff.

*H. F. Hathaway*, (*F. E. Smith* with him) for the defendant.

JENNEY, J. The plaintiff's intestate, a boy about four years and ten months old, hereinafter called the plaintiff, received fatal injuries from a motor truck operated by an employee of the defendant in the course of his employment. He died without conscious suffering.

It is not necessary to consider the question argued as to the due care of the plaintiff or that of his parent. See as to this *Sullivan* v. *Chadwick*, 236 Mass. 130.

The facts are considered in the aspect most favorable to the plaintiff. The accident occurred in the forenoon of a pleasant day in Fall River, on Anawan Street, a much travelled highway running east and west and having a great volume of heavy trucking and other traffic. The street in that locality was almost level and was straight for a distance of at least six hundred feet.

One witness who testified concerning the injury did not see its occurrence and did not know where it happened. While this witness was at work unloading barrels of oil from a truck which was backed up close to the door of a building adjoining the street, he saw two children going west on the left side of the street; the first that he knew of the accident was when a man brought the injured boy into the building in which he was at work and placed the child in his charge. Then he looked out of a window and saw the defendant's truck on the street three or four yards east of the one from which oil was being unloaded. It was facing west on a slant on the right side of the road and seemed "to be as if over toward the curbing."

Another witness, who was driving a wagon, saw four children travelling in the middle of the road. The truck from which the

oil was being unloaded was at that time nearer to him than the children. The defendant's automobile was then about ten or fifteen yards from them. He saw no other vehicle of any nature in the immediate locality except that from which the oil was being unloaded. The meagre record as to what he observed is given in full: Q. "Where were the children when you first saw them?" A. "I saw the children in the middle of the road." — Q. "Which way were they going?" A. "They were going from the American Print Works up." — Q. "Now, did you see the automobile strike this child?" A. "Yes, sir." — Q. "Was this child nearer to the sidewalk or further from the sidewalk on this side?" A. "He was further from the sidewalk." — Q. "This one was further?" A. "Yes." — Q. "That is, he was more in the road?" A. "He was more in the road, yes." — Q. "What part of the automobile hit that child?" A. "I suppose the middle part." — (Counsel for the defendant: "One moment.") — Q. "Could you see what part hit him?" A. "No, I could n't see." — Q. "How far did the automobile, or, where was the child when the automobile stopped?" A. "The child was — the machine was from the child about ten feet." — Q. "About ten feet from the child?" A. "About ten feet from the child." — Q. "That is, the child then was about ten feet behind the machine?" A. "Behind the machine."

Afterwards this witness testified that he first saw the four children walking in the street about five or six yards from the truck standing for the delivery of oil, and at that time they were going toward Main Street. He stopped his carriage immediately before the child was injured because he saw these children in the middle of the street and thought that his own child might be there.

The operator of the defendant's truck did not testify. From the answers of the defendant to interrogatories propounded by the plaintiff, it appeared that after the accident ¡he went away leaving "the truck in the street in front of his home," and had not been seen by the defendant since the injury. There was other evidence that the operator had not been found since the accident, although search had been made.

The plaintiff argues that this conduct of the driver was evidence of negligence on his part admissible against the defendant. The

acts of the operator after the accident had happened and not in any way relating to the occurrence were not evidence as against the defendant. An agent's admissions as such are not admissible against his principal. Neither was the conduct of the operator so connected with the accident as to be part of the *res gestae.* *Williamson* v. *Cambridge Railroad*, 144 Mass. 148. *Richstain* v. *Washington Mills Co.* 157 Mass. 538. He carried the injured child into a nearby building, and went away saying that he was going for a doctor. An ambulance came and took the child away. These acts had no such connection with the accident as to render them of any evidentiary effect upon the question of the defendant's liability. An express admission of fault by the operator at this time would have been inadmissible. His conduct also is incompetent for that purpose. *Gillet* v. *Shaw*, 217 Mass. 59. What its effect would be in an action against him need not be considered. St. 1916, c. 290 (see now G. L. c. 90, § 24), making it a criminal offence for the driver of an automobile to go away after knowingly causing injury to a person without stopping and making known his name, residence and the number of his vehicle, relates only to the operator and does not create any liability, criminal or civil, on the part of an owner who is not the operator. The evidence, while admissible to explain the failure of the chauffeur to testify, was not competent on the question of liability.

It is clear that ordinarily, at least, the happening of an accident of this kind is not sufficient to warrant a finding of negligence. There was no evidence as to what the children did after they were seen by the witness who was upon the wagon, at which time they were about ten or fifteen yards away from the truck; nor did it appear what the conduct of the driver was thereafter. If we assume that he saw the children, even then there was no evidence that his negligence caused the injury. The fact that the automobile was about ten feet beyond the plaintiff's intestate when it stopped after the accident, was not sufficient to show negligence of the driver, alone or in connection with other facts. The argument that the operator saw the child and was negligent either in what he did or what he failed to do in the operation of the truck is based wholly on conjecture and not upon fact. While the case is much closer than *Jabbour* v. *Central Construction Co.* 238 Mass. 453, it is governed by the principle there enunciated.

The verdict for the defendant was rightly directed, and in accordance with the terms of the report judgment is to be entered thereon.

*So ordered.*