## BIBB COUNTY *v.* WILLIAMS.

1. The excerpt from the charge of the court, as set out in the first division of the opinion, and which instructed the jury as to the law applicable to the facts of the case, as contained in portions of sections 9 and 10 of the act of the legislature of 1915 (Acts Ex. Sess. 1915, p

107, sections 9, 10), relating to the equipment of motor vehicles with lamps, and regulating the rate of speed of such vehicles upon approaching any bridge, etc., at a rate not greater than ten miles an hour, is erroneous, for the reason that so much of the act of 1915 (supra) as is contained in sections 9 and 10 thereof is unconstitutional and void as being repugnant to art. 5, sec. 1, par. 13, of the constitution of the State (Civil Code of 1910, § 6482) which declares that "no law shall be enacted at a called session of the General Assembly, except such as shall relate to the object stated in his [the Governor's] proclamation convening them." Sections 9 and 10 of the act of 1915 (supra) do not relate to any object stated in the Governor's proclamation convening the General Assembly in special session.

2. Error is assigned upon the ground that the verdict finding for the plaintiff $7,500 is so excessive as to show undue bias and prejudice. In view of the fact that a new trial is granted upon other grounds of the motion, this ground of the motion will not be considered. For similar reasons no ruling is made upon the sufficiency of the evidence to authorize the verdict.

3. In one ground of the motion for new trial complaint is made of the admission in evidence of declarations of Williams, the deceased, made when he took the wheel of the automobile and began driving, to the effect that he would drive at a very moderate rate of speed. In this connection the evidence shows that the deceased took the wheel when but a short distance from the approach to the bridge, and that the automobile was driven off of the bridge and the deceased killed immediately after the making of the declarations. The evidence of the witness who testified to the declarations is that the car was being actually driven by the deceased at a rate of speed of between fifteen and twenty miles per hour at the time of the injury. These declarations were hearsay and inadmissible, and upon another trial of the case this evidence should be excluded.

4. None of the other grounds assigning error upon certain excerpts from the charge of the court as given, and refusals of certain written requests to charge, or rulings upon the admissibility of evidence, require a reversal of the case.

5. Motion was made to review and overrule the decision in the case of *Jones* v. *State,* 151 *Ga.* 502 (107 S. E. 765). Justice HINES declines to participate in the decision of this case, as he was of counsel in the case of *Jones* v. *State,* supra. The other five Justices are of the opinion that the ruling on the constitutional question made in the *Jones* case was correct; consequently the decision stands as rendered.

No. 2553. JANUARY 11, 1922.

Action for damages. Before Judge Gunn. City court of Macon. February 17, 1921.

Mrs. Miriam L. Williams brought suit against the County of Bibb, to recover damages in the sum of twenty thousand dollars. The petition alleged in substance the following: The plaintiff was the widow of J. Walker Williams, who met his death in Bibb County,

April 12, 1918. Clinton road is a public road and highway in Bibb County, under the jurisdiction and authority of Bibb County, and was on April 12, 1918. On the date named, about eleven o'clock at night, J. Walker Williams left the city of Macon to return to his home in Monticello, Georgia, over the Clinton road. Williams was driving a light Ford car and it was necessary to cross Walnut Creek over a certain bridge which had been rebuilt about eight years previously. The flooring was of planks approximately three inches and nine inches wide. A guard-rail was maintained on each side of the bridge. The upright posts which supported and formed part of the guard were not affixed to the beams or cross-sills of the bridge, but were negligently attached to the ends of the planks which formed the floor of the bridge. The guard-rails at certain points had become rotten both as to the upright support and as to the horizontal structure. This condition had been easily observable for twelve months or more, and the attention of the county authorities had been repeatedly called to the insecure and unsafe condition of the bridge. There was also a hub-board intended to prevent the hub of vehicles from striking the upright posts. Sometime previous to April 12, 1918, on account of the rotten and insecure condition of the timber comprising the guard-rail, a section approximately fifteen feet in length dropped at one end from the support to which it had been nailed, both being so worn and rotten the plank could not hold its position. The end of the plank which had fallen was the end toward the city of Macon. On account of the vibration caused by travel, which was intensified by reason of the insecure condition of the bridge, the free end of the loosened plank referred to would from time to time work out into the passageway of the bridge. Persons traveling over the bridge from time to time pushed this free end against the guard-rail, where for a time it would remain, finally working out again into the passageway. Williams was unfamiliar with the Clinton road and the bridge referred to. He was driving cautiously and slowly over the public road, which he had reason to expect was reasonably safe for travel. He entered safely upon the bridge and traversed safely approximately thirty feet. The free end of the hub-rail extended well into the passageway of the bridge, so that the wheel of the light automobile struck against the hub-rail and was thrown over towards the left side of the bridge and against the

guard-rail, which was intended to protect that side of the bridge. The upright posts immediately gave way, with the result that the automobile in which Williams was riding fell from the bridge to the ground and rocks below; in the fall Williams was pinioned and crushed, from which injuries he died.

The defendant filed an answer denying the material allegations of the petition, and averring that the death of Williams could have been avoided by the exercise of ordinary care on his part, and that he was guilty of negligence which contributed to his injury and caused the same. The jury returned a verdict for the plain-tiff in the sum of $7,500. A motion for new trial was overruled, and the defendant excepted. Other facts necessary to an understanding of the questions involved will appear in the opinion.

*Walter DeFore, John R. L. Smith,* and *Grady C. Harris,* for plaintiff in error.

*A. S. Thurman* and *Hall, Grice & Bloch,* contra.

HILL, J. (After stating the foregoing facts.) On the trial of the case there was evidence tending to show that at the time the plaintiff was killed he was driving an automobile at night along the Clinton highway leading from Macon to Monticello. There were two other occupants of the car. The evidence tended to show that the car was traveling about fifteen or twenty miles per hour as it approached the bridge where the injury occurred, and as the car went over the roadway on to the bridge it was traveling from ten to fifteen miles an hour. The approach of the public road to the bridge is abrupt and almost at a right angle. The deceased, who was driving the car, put on brakes going down the hill; and when the car went on the bridge, running, according to the testimony of a witness for the plaintiff, from ten to fifteen miles an hour, " the left-hand wheel started to scraping; . . it was going to the left. Mr. Williams was trying to pull to the right — it would not pull. I didn't touch the wheel. I hit his hand. I grabbed at the wheel and hit his hand. I jumped out when it cut short to the left and hit against the post. When I jumped out a rail or plank hit me in the back and the car and everything else went over the fill. The car hit the railing and fell off the bridge on the left side." When the car hit the ground Mr. Williams was under it, and died there. On the trial of the case the court charged the jury as follows: " The law of our State now requires operators of auto-

mobiles or motor-vehicles on the public highways of this State and this county and the bridges in this county to observe certain rules of diligence. The law requires that every person operating an automobile during the period from one hour after sunset until one hour before sunrise shall have the automobile or motor-vehicle equipped with at least two front lamps, throwing strong white lights to a reasonable distance in the direction in which such vehicle is proceeding; and that the operator of such vehicle shall not, upon approaching any bridge or sharp curve, or in traversing such bridge or sharp curve, operate said vehicle at a greater speed than ten miles per hour, and must at all times have said motor-vehicle or automobile under immediate control. The court charges you, gentlemen of the jury, that if you believe from the evidence that on the occasion in question J. Walker Williams was operating this motor-vehicle at night, and said motor-vehicle was not equipped with lights as the law requires; or that on approaching this bridge or a sharp curve he was operating the motor-vehicle at a greater speed than ten miles per hour, or on approaching the curve or in traversing the curve, or on approaching the bridge or in traversing the bridge — the court charges you that J. Walker Williams under those circumstances would be guilty of negligence as a matter of law." In this and several of the grounds of the motion for new trial error is assigned on the court's charge in which the court applied to the facts of the case and contentions of the parties the provisions of the motor-vehicle act of 1915 (Acts Ex. Sess. 1915, p. 107) ; and in several grounds of the motion error is also assigned upon the refusal of the court to give in charge, on timely written requests, the provisions of the act of 1910 (Acts 1910, p. 90), which was an act to regulate the running of automobiles, etc., which charge as given and requests to charge relate to the rate of speed at which automobiles should be run when approaching or traversing a curve or bridge, and also the manner in which motor-vehicles should be equipped with lamps, etc.; the act of 1915 (sec. 10) prescribing the maximum rate of speed at ten miles per hour, and the act of 1910 (sec. 5) fixing the maximum rate of speed at six miles per hour, when approaching and crossing a public bridge or curve; the act of 1915 (sec. 9) also prescribing that every motor-vehicle while in use upon the streets or highways of this State shall be equipped with at least two front lamps throwing strong white

lights to a reasonable distance in which such vehicle is proceeding, etc.; and the act of 1910 (sec. 4) providing that from one hour after sunset to one hour before sunrise there shall be displayed on the front of every machine, while being operated or driven along or upon any of the highways named in the act, " at least one white light throwing a bright light at least one hundred feet in the direction in which the machine is going, and shall also exhibit on the rear of each machine at least one red light which shall effectually illuminate the number tag on the rear."

In the proclamation of the Governor convening the General Assembly in extraordinary session on November 3, 1915, was recited, among other things, the following: " Whereas some doubts have arisen concerning the validity of the automobile license tax, owing to the decisions of some of the courts touching the same, which tax it is stated amounts to about $110,000 annually, and the loss of which it is thought could be prevented by a slight amendment of the law providing methods for its collection and disposition." And also, " To consider the question of amending the automobile license tax, authorized in the act approved August 19, 1913, amending an act approved August 13, 1910, and any other acts concerning the same, so as to secure the collection and disposition of said tax." Governor's Proclamation, Georgia Laws, Extraordinary Session 1915, pp. 5, 6, 7. At the extraordinary session of the General Assembly in 1915 an act was passed, approved by the Governor on November 30, 1915 (Acts Ex. Sess. 1915, p. 107), in which it was declared in secs. 9 and 10 as follows: " Sec. 9. Every motor-vehicle or motorcycle, while in use or operation upon the streets or highways of this State, shall at all times be provided and equipped with efficient and serviceable brakes, and with a signaling device consisting of a horn, bell, or some other suitable device. It shall likewise be equipped with at least two front lamps, throwing strong, white lights to a reasonable distance in the direction in which such vehicle is proceeding, a rear lamp showing a red light plainly visible in the reverse direction to which said vehicle is proceeding, and such other light so reflected as to clearly reveal the figures on the number-plate; provided, that a motorcycle shall be required to be equipped with one front light only. All of such lamps or lights shall at all times be kept burning while such vehicle is in use or operation or standing in a public street or highway during the

period from one hour after sunset until one hour before sunrise." The second paragraph of section 10 is as follows: "Upon approaching any bridge, railroad-crossing, dam, sharp curve, dugway or deep descent, or in traversing such bridge, railroad-crossing, dam, curve, dugway or descent, the operator of a motor-vehicle or motorcycle shall at all times have said vehicle under immediate control, and shall not operate said vehicle at a greater speed than ten miles per hour." The act of 1915 contained a clause repealing all laws in conflict therewith, and made the violation of any of the provisions of the act a misdemeanor. It is obvious from reading the proclamation of the Governor, in connection with the act of 1915, that so much of the act (of 1915) as is contained in sections 9 and 10, supra, does not relate to the purpose of convening the legislature in extraordinary session; and therefore, under the principle ruled in the case of *Jones* v. *State,* 151 *Ga.* 502 (107 S. E. 765), so much of the act of 1915 as is contained in sections 9 and 10 must be held unconstitutional and void. The court ruled in the *Jones* case: "So much of the act of the General Assembly passed at the called session of 1915 (Ga. L. Ex. Sess. 1915, p. 107) as (in sec. 10) declares it to be unlawful for any person to operate a motor-vehicle upon any public street or highway at a speed exceeding 30 miles per hour, and as (in sec. 15) declares it to be unlawful for any person to operate a motor-vehicle upon any public street or highway while under the influence of intoxicating liquors or drugs, is unconstitutional and void, for the reason that the constitution, art. 5, sec. 1, par. 13 (Civil Code, § 6482), declares that 'no law shall be enacted at a called session of the General Assembly, except such as shall relate to the object stated in his [the Governor's] proclamation convening them; and such designated portions of the act above referred to do not relate to any object stated in the proclamation calling the special session, the only reference to motor-vehicles in the proclamation being as to amending the automobile license tax laws of the State, so as to secure the collection and disposition of the same. . . The approval of the act by the Governor did not make it valid." Nor does the act of 1915 repeal the act of 1910, as contended. *Jones* v. *State,* supra. We are of the opinion, therefore, that the charge of the court, which sought to apply sections 9 and 10 of the act of 1915 (supra) to the facts of this case, was error requiring a new

trial.    See also to the same effect as the *Jones* case (supra), (*McDonald* v. *State,* 152 *Ga.* 223 (109 S. E. 656); *Howard* v. *State,* 151 *Ga.* 845 (108 S. E. 513).

None of the other headnotes require elaboration.

*Judgment reversed.    All the Justices concur, except*

HINES, J., who having been of counsel in the case of *Jones* v. *State,* does not participate in this decision.