## DUREN v. THE STATE.

1. Evidence of a message received by the deceased, which purported to come from the accused, requesting the deceased to come to the place of business of the accused, was properly admitted under the rule that information received which shows motive or explains conduct is admissible in evidence, not as hearsay, but as original evidence.

2. "That declarations offered in evidence as dying declarations were made under the belief that the wound was mortal and death impending may be inferred from the nature of the wound, and other circumstances, though nothing direct was said respecting death or danger. The court must judge of the preliminary evidence, in the first instance, and deeming it prima facie sufficient, should admit the declarations to the jury, instructing the jury afterwards to pass finally for themselves on the question whether or not the declarations were conscious utterances in the apprehension and immediate prospect of death." *Dumas* v. *State,* 62 *Ga.* 58; *Perdue* v. *State,* 135 *Ga.* 277 (69 S. E. 184) ; *Green* v. *State,* 154 *Ga.* 117 (113 S. E. 536) ; *Washington* v. *State,* 137 *Ga.* 218 (73 S. E. 512).

3. Where one accused of homicide, in his statement to the jury, admits the shooting of the deceased, but claims justification, the case is not one depending wholly upon circumstantial evidence, and the failure of the court to charge upon that subject is not cause for reversal. *Harris* v. *State,* 152 *Ga.* 193 (108 S. E. 777), and cases cited; *Griner* v. *State,* 121 *Ga.* 614 (49 S. E. 700).

4. The evidence was sufficient to support the verdict.

NO. 4204. JULY 24, 1924. REHEARING DENIED OCTOBER 1, 1924.

Murder. Before Judge Summerall. Ware superior court. February 2, 1924.

*Theodore Titus, Wilson & Bennett,* and *Blalock & Blalock,* for plaintiff in error.

*George M. Napier, attorney-general, A. B. Spence, solicitor-general, T. R. Gress, assistant attorney-general, Parker & Parker,* and *J. H. Quarterman,* contra.

BECK, P. J. Mrs. Nora Duren was tried under an indictment charging her with the murder of Ira James. The jury returned a verdict of guilty, with a recommendation to the mercy of the court. The defendant made a motion for new trial, which was overruled, and she excepted.

From the evidence in this case it appears that James, the decedent, on the day of the homicide, at about 4 o'clock in the afternoon, went to the store of Mrs. Duren, or to a store that she was in charge of, and shortly after he entered the store a shot was heard. Several of the witnesses in the case entered the store in a very short time afterwards and found James lying upon

the floor, mortally wounded. No one was in the store at the time of the shooting, so far as any proved facts in the case show, except the accused and the deceased. No eye-witness to the homicide was produced. A physician shortly after the shooting entered the building where the wounded man was lying, examined him, and, as he testified, "found a bullet wound an inch and a half below the right of his navel, through the abdomen, that is, into the abdomen. . . It was a large wound, at least a 38 bullet made the wound. It could have been a larger bullet. It looked like the bullet went straight in. I didn't probe it. . . The wound I saw in James, in my opinion, was likely to be fatal; it was a very dangerous wound. I heard Mr. James make a statement after he was shot. He made one statement in the store, and later one in his home. The first statement he made was while I was dressing his wound in the store. It was after he knew of the fact that he had been wounded. He knew he was shot. He was conscious of his condition. While I was dressing him I asked Mr. James who shot him, and then somebody asked him who was in the store, and he said he didn't see any one except Mrs. Duren. He was then asked if Mrs. Duren shot him, and he said he didn't see her shoot him. That was all he stated that I remember. He said Mrs. Duren was looking straight at him when the pistol fired, and that she said, 'What do you mean?' . . He said Mrs. Duren did not say anything from the time he came in till after the shot was fired, and then she remarked, 'What do you mean?' and turned around and walked out at the back. That was the way I understood it. He said she was standing behind the little case, back behind the show-case. I never heard him say where he was standing." The little show-case referred to was a glass case, and some glass in it had been shattered. A newspaper was lying on the top of it. Other witnesses testified to substantially the same statement made by James as that quoted above.

The defendant made a statement to the court and jury, which was in part as follows: "Mr. and Mrs. James were good friends, and they traded with us a right smart in the store and were in the store a great deal, and Mr. James was often in the store— often in the store, and he seemed to always be joking and all; and on Tuesday, on this Tuesday afternoon Mr. Duren left on Thursday and went to Florida, and Mr. James knew that Mr.

Duren was gone; and on Tuesday afternoon he came in the store. I was on the porch and he stepped off his motor car. I hadn't sent for him. I didn't send for him. And he came in the store and I was on the porch, and I walked in the store, and he came on in behind me and asked where Duren was, and I told him he was off—he was away. And he asked me if I didn't get lonesome, and I told him 'No,' and he walked up to me and grabbed me with both arms, and I wrung loose from him and asked him what he meant and run around back of the counter, and he came right across the counter." This was followed by the further statement that the deceased made an insulting proposal to her; and then, continuing the language of the accused, "He reached over and grabbed me by the arms, and when he did I shot him, and asked him what he meant, and in the scramble we broke the show-case." She explained why she had not made a statement of the facts before, by saying that it was embarrassing for her to speak of it and she had a feeling of shame at the thought of telling it to others. She concluded by saying, "Mr. James knew why he was shot. He knew that I shot him. We were scrambling there, and he had me around the arms, and I shot him, and we broke the show-case during the time that he had me, and I couldn't get loose."

1. The original motion for new trial contains the usual general grounds. In the fourth ground of the motion error is assigned upon the ruling of the court admitting the evidence of Mrs. James, the wife of the deceased, that "the twelve-year-old son of the movant had come to the home of the deceased at 7 o'clock on the night preceding the shooting of the deceased," and said to Mrs. James, "Mama said for Mr. James to go to the store," and came back again and said, "Mama said for him to go to the store;" to which Mrs. James replied she would tell him as soon as he (Mr. James) got to the house. Mrs. James was afterwards permitted to testify that when he came to the house the store was closed and he did not go over there that night. Another witness named in this ground of the motion for new trial was permitted to testify, over objection, that on the afternoon of the homicide a little boy that he had seen around Mr. Duren's store called to Mr. James and said, "Mama wants to see you in the store," and Mr. James said "All right." And still other witnesses were permitted to give

substantially the same testimony. And the evidence shows that after receiving the message Mr. James went to the store. The evidence tending to show that a message came from Mrs. Duren requesting James to come to the store was objected to upon the ground that it was hearsay testimony and there was no evidence showing that Mrs. Duren had actually sent such a message, and that consequently the evidence showing that such a message was given to James was incompetent. The court overruled the objection, stating that he would let the evidence "go in for the purpose stated by counsel for the State, to show conduct of parties."

The court did not err in permitting the evidence to go to the jury for the purpose of illustrating conduct. "Information, conversations, letters and replies, and similar evidence, . : to explain conduct and ascertain motives, . . are admitted in evidence, not as hearsay, but as original evidence." Penal Code, § 1023. In the case of *Lyman* v. *State,* 69 *Ga.* 404, where the accused was charged with the offense of an assault, the person assaulted, in stating how the assault happened, testified as follows: "A young man reported that Neese's house had been broken into. I notified Stephens, the sheriff, of the fact. I was acting as a special policeman. He and I started up there. . . When we got to a house used by McClatchey for a limehouse, Stephens said, 'Hold on; I saw something go in there.' Stephens asked me to strike a match," etc. Error was assigned upon the admission of this testimony, which had been objected to; and this court held that the admission of this testimony was not error, saying, "When information received is a fact showing motives or explaining conduct, it ceases to be hearsay evidence and becomes admissible." In the case of *Ponder* v. *State,* 87 *Ga.* 262 (13 S. E. 464), a case very closely in point, this court said: "In a trial for murder, verbal directions given by the deceased to his brother to follow the accused and see that he did not leave the road in which the homicide shortly afterwards occurred, and over which the deceased and his brother were about to pass, being in evidence, the State, in order to show that this request was probably meant as a precaution for defense and not as a measure of attack, may prove that it followed and was connected with a suggestion made by a third person that the accused would 'waylay the boys to-night,' although the accused was not present and did not hear the conversation or any part of

the same." In the case of *Fitzgerald* v. *State,* 10 *Ga. App.* 70 (72 S. E. 541), the court quoted approvingly the following from Professor Wigmore's work on Evidence (§ 1768) : "The prohibition of the hearsay rule does not apply to all words or utterances merely as such. If this fundamental principle is clearly realized, its application is a comparatively simple matter. The hearsay rule excludes extrajudicial utterances only when offered for a special purpose, namely, as assertions to evidence the truth of the matter asserted." See also the cases of *Patterson* v. *State,* 134 *Ga.* 264 (67 S. E. 816), *Ricketson* v. *State,* 134 *Ga.* 306 (67 S. E. 881), and *Giddens* v. *State,* 152 *Ga.* 195 (108 S. E. 788).

This ruling does not conflict with the ruling made in the case of *Mitchell* v. *State,* 71 *Ga.* 128, 149. From a statement of that case it is inferable that the messages which it was proposed to prove were held to be hearsay, and also objectionable on the ground that they were res inter alios acta. The reception of the messages did not, in the main, illustrate the conduct of the deceased, but tended to show preparation on the part of the accused, or intention on the part of the accused to injure the deceased. In the instant case the evidence was admitted purely for the purpose of illustrating the conduct of the deceased. He had gone to the store of Mrs. Duren, where it does not appear there was any one but the accused at the time. The woman's husband was absent. She charged the deceased, in her statement, with having made an assault upon her after having made an insulting proposal. Under this evidence it would have been fair argument for the defendant's counsel to urge that it was for the purpose of making an assault upon a woman who was alone in the building that James had gone to the store. If, as a matter of fact, the son of Mrs. James, or some little boy, repeatedly said to James that Mrs. Duren wanted him to come to the store, was not that a fact tending to show that it was in compliance with a request, whether such request had been actually made or not, and not for the purpose of making an assault upon the woman, that James went to the store? As we have ruled above, the admission of this evidence was not error.

2. The ruling made in the second headnote sufficiently disposes of the objections to the evidence as to a statement made by the deceased, offered in evidence as a dying declaration, and the

exceptions to the charge upon that subject; the exceptions to the evidence being that proper foundation had not been laid for its introduction, and the exceptions to the charge being that the evidence did not authorize a charge on that subject.

3. The ruling made in the third headnote disposes of the exception to the charge based upon the ground that the court failed to charge the rule with reference to circumstantial evidence.

4. The evidence was sufficient to support the verdict.

*Judgment affirmed. All the Justices concur, except Russell, C. J., and Atkinson, J., dissenting.*

ATKINSON, J. It appears from the allegations in the fourth ground of the motion for a new trial, to which the first division of the opinion refers, that when the testimony objected to as hearsay was admitted, the court stated: "I overrule the objection and will let the evidence go in for the purpose stated by State's counsel, which was for the purpose of showing why he went into the store, to explain his motive why he was there, the purpose of his mission into the store, to show conduct of the party." Under this statement by the court the testimony was limited to proof of motive, and with such limitation its admission was not erroneous. *Cody* v. *State,* 124 *Ga.* 446 (52 S. E. 750). The case differs from *Mitchell* v. *State,* 71 *Ga.* 128, *Carter* v. *State,* 56 *Ga.* 463, and *Tiller* v. *State,* 96 *Ga.* 430 (23 S. E. 825), in which there was no such limitation.

In her statement before the jury the defendant admitted that she shot the deceased, but qualified the statement with the further statement that she shot him to prevent an assault which he was then attempting to commit upon her person. This statement would not authorize a presumption of malice, and would be insufficient within itself to support a verdict of guilty of the crime of murder. A decision to this effect was rendered in the case of *Futch* v. *State,* 90 *Ga.* 472 (16 S. E. 102). In that case it was stated, on p. 480: "In his statement to the jury the accused admitted that he had killed the deceased intentionally and with a deadly weapon, but, as we have seen, this admission was accompanied by an explanation which, if true, would negative malice. While such an admission, without any explanation as to why the killing was done, would give rise to a presumption of malice, no such presumption could be drawn from a statement which admits

but at the same time justifies the act. That part of the statement which, if unexplained, would criminate, although it could be received as evidence of the fact it admitted, could not, to the exclusion of another part which qualified and explained it, create a presumption that accused was actuated by malice and was guilty of murder." See also *Perkins* v. *State,* 124 *Ga.* 6 (52 S. E. 17); *Owens* v. *State,* 120 *Ga.* 296 (48 S. E. 21); *Mann* v. *State,* 124 *Ga.* 760 (53 S. E. 324, 4 L. R. A. (N. S.) 934). The evidence adduced at the trial was insufficient to show that the defendant fired the fatal shot. It required the admission made by the defendant in her statement before the jury to make out this part of the State's case; and as that statement was not a mere admission of the killing, but was an admission coupled with circumstances that would show justification, the evidence did not authorize a verdict finding the defendant guilty of murder.

The statement of the defendant before the jury did not amount to a confession of a crime. If the evidence authorized a conviction of any lesser offense than the crime of murder, such conviction depended entirely upon circumstantial evidence. In such case it would be the duty of the judge to give in charge to the jury, the law relating to circumstantial evidence, without a request. *Weaver* v. *State,* 135 *Ga.* 317 (2) (69 S. E. 488). The decision in the case of *Harris* v. *State,* 152 *Ga.* 193 (supra), by only five Justices, is not binding as authority and is not supported by the decisions which it cites. In the case of *Griner* v. *State,* 121 *Ga.* 614 (supra), the State relied for conviction upon circumstantial evidence and a "confession." In view of what has been said above, the result announced in the first division of the opinion of the majority is concurred in; but it is impossible to concur in the ruling announced in the third division, or in the judgment holding the evidence was sufficient to authorize the verdict.