**PETROLEUM CARRIER CORPORATION et al. v. SNYDER et al.**
**No. 11768.**

Circuit Court of Appeals, Fifth Circuit.
March 21, 1947.

---

HUTCHESON, Circuit Judge, dissenting.

Cubbedge Snow, of Macon, Ga., for appellants.

Carlton Mobley and E. W. Maynard, both of Macon, Ga., for appellees.

Before HUTCHESON, HOLMES, and McCORD, Circuit Judges.

## HOLMES, Circuit Judge.

This is an action by appellees, brought under the Georgia law,[1] to recover damages from appellants for the wrongful death of their father. The latter received a fatal injury when his left arm was crushed between the trailer of a large gasoline truck and the door of an automobile that he was driving. The truck was owned by the Petroleum Carrier Corporation and driven by D. A. Hudson, who were defendants below and are appellants here. The trial resulted in a verdict for the plaintiffs, and from a judgment in accordance with the verdict the defendants appealed.

The accident occurred about 10:30 o'clock at night, between Milledgeville and Sandersville, Georgia, on a straight stretch of paved highway. The paved part of the road was twenty feet wide, with usable dirt shoulders about five feet wide on each side. The left front fender and the left rear fender of the car came in contact with the back bumper or mud-guard of the trailer. There was an indentation on the outside of the left door of the car, and the door handle was bent back where the arm of the deceased was pressed against it.

The amended complaint alleged that the individual defendant was negligent in suddenly driving the truck from the right to the left side of the highway, thereby striking the decedent's car and virtually severing his left arm; in operating the truck in excess of fifty miles per hour; in failing to dim the lights and blow the horn of the truck; in operating the truck at a speed greater than was reasonably safe; and in that, after the accident, the driver drove the truck away from the scene thereof without making any effort to render assistance to the injured occupant of the car.

The defendants denied these allegations of negligence; and averred that the automobile driven by the deceased was being operated at an excessive rate of speed and on the wrong side of the road; that the defendant Hudson pulled the truck to his extreme right and as far off the pavement as he could safely do, but nevertheless the automobile driven by the deceased struck the left rear end of his trailer; that Hudson immediately stopped his truck, got out of the same, and walked back to render assistance, but the automobile driven by the deceased did not stop within his sight, and no one in the car came back to the scene of the accident. A graphic account of the occurrence is contained in the testimony of the witness Pryor, as follows:

"I was getting a cigarette out of a package. I was not looking up, and I heard Mrs. Wood say, 'Look out. He's on your side of the road.' [This exclamation was relevant and competent as part of the res gestae.] I looked up and saw the lights. All just in a split second, and the first thing I thought of was pulling her over because it was on her side. I pulled her over and did not see very much of it. She was sitting right behind the driver at the time she screamed. I do not know whether she was sitting back or leaning forward. Between the time she screamed and the time the cars crashed was all in a flash. I did look up and saw the lights of the other car. It was just a side-swipe, more of a thud than anything else. I asked Snyder if it hurt his car. He said no, he didn't think it did, but it seemed to numb his arm and he pulled off on the shoulder of the road, and as feeling came back into the arm he began screaming. We stopped and I walked around the front of the car and came

[1] Sec. 105-1302 of the Georgia Code of 1933.

around, and when I saw he was hurt I pushed him over on the other side of the car and asked Mrs. Wood if she could see what hit us. I did not have time to look and did not want to take time. I wanted to get him to the hospital. I walked around the front of the car. * * * When I asked Mrs. Wood to look she certainly did. He did not stop, or she told me she did not see him. After the impact between the two vehicles I would say Snyder's car could not have gone much over fifty or sixty feet. I did not measure it, but he was not going very fast. I would judge he was not going over thirty-five miles per hour at the time. Snyder stopped the car himself. * * * I don't know whether the truck dimmed its lights or not. You see it had lights all around it, and I just glanced up and saw the lights and couldn't have told whether they were on bright or what. I thought it was a truck of some kind. I thought we were on our side of the road at the time. I don't think Snyder made a drastic turn when he pulled out on the side to get on the dirt shoulder. * * * I don't remember how Snyder was driving. Every time I noticed he was on his side of the road."

Pryor, Mrs. Woods, and the driver were the only occupants of the car. There was ample evidence to support the verdict, and the issues were clearly such as were properly submitted to the determination of a jury. The decisive questions on this appeal relate to the admissibility of evidence and the court's instructions to the jury.

█ Error is assigned to the admission of testimony by one Osborne, a witness for the plaintiffs, who gave instructions to Snyder (the deceased) about driving the car involved in the accident. Osborne testified that, "two or three or four days" before this accident, he told the deceased not to drive the car over thirty-five miles an hour; that if he did, he would throw the bearings out because it was not getting sufficient oil; that if he drove it as much as a mile at a higher rate of speed, he would throw the bearings out for lack of oil. This was objected to as hearsay, but the court held it to be admissible. The evidence was intended to corroborate the testimony of other witnesses for the plaintiff to the effect that the car was not running over thirty-five miles an hour at the time of the collision, the speed of the car being an important issue. This evidence was admissible under a Georgia statute, not as hearsay but as original evidence of a fact that was intended "to explain conduct and ascertain motives." [2]

█ The explanation as to why the car was being driven so slowly on a straight stretch of open highway was a relevant and material fact that the jury was entitled to know in considering the weight and credibility of appellees' evidence as to the speed of the car.[3] All evidence is admissible in the courts of the United States that is admissible under the rules of evidence applied in the courts of general jurisdiction of the state in which the United States court is held.[4]

█ Georgia also has a statute admitting statements "accompanying an act, or so nearly connected therewith in time as to be free from all suspicion of device or afterthought." [5] This statute disposes, adversely to the defendants, of the exception to the court's charge with reference to the alleged failure of the truck-driver to dim his lights. There was evidence to support this charge, since the witness Mrs. Woods testified that, immediately after they started from the scene of the accident, Snyder said that the driver did not dim his lights.

2 Sec. 38-302, Georgia Code of 1933, Sec. 5763, Georgia Civil Code of 1910; Wigmore on Evidence, Sec. 1789, citing said Georgia statute, "Whenever any act may be proved, statements accompanying and explaining that act made by or to the person doing it may be proved if they are necessary to understand it." Stephen's Digest of Evidence, Art. 8. See also Reynold's Theory of Evidence, Sections 8 and 11. Thus, the Georgia statute seems to be merely declaratory of the general rule of evidence on the subject.

3 Cf. Stamps v. Newton County, 8 Ga. App. 229, 231, 68 S.E. 947; Duren v. State, 158 Ga. 735, 124 S.E. 343; Wigmore on Evidence, Sec. 1789, including note at bottom of page 821.

4 Rule 43(a) of Federal Rules of Civil Procedure, 28 U.S.C.A. following section 723c; Hartford Accident & Indemnity Co. v. Olivier, 5 Cir., 123 F.2d 709; Milwaukee Mechanics Ins. Co. v. Oliver, 5 Cir., 139 F.2d 405.

5 Sec. 38-305, Georgia Code of 1933, Sec. 5766, Georgia Civil Code of 1910.

This, she testified, was all he ever said, "because he was unconscious after that." This evidence was admissible under the above-cited statute.

Error is also assigned to the refusal of the court below to instruct the jury that the plaintiff would not be entitled to recover if the deceased, as he approached the truck, was driving with his arm extending out the window of his car as much as six inches, without his hand on the steering wheel; and that this act was the direct and proximate cause of his death. This instruction was unsupported by the evidence in one respect, and in another it announced an incorrect principle of law; it was also ambiguous. With his left arm hanging out the window, his left hand could not have been on the steering wheel; moreover, we cannot approve an instruction that implies negligence as a matter of law from driving an automobile with one hand. The deceased was evidently driving with his right hand, and he handled the car in such manner, even after his left arm was disabled, as to bring it to a stop without the other occupants of the car knowing that he had been hurt. Another view is that the deceased may have held his hand out for the purpose of giving a signal. We think the issue as to contributory negligence was for the jury, and that the court did not err in its instructions to this effect.

The lower court's action in reading the Georgia hit-and-run statute[6] to the jury, and its instructions in connection therewith, are assigned as error. The appellant contends that there was "no credible evidence whatever" that the truck driver violated this section. Whether evidence is credible or not is a question for the jury, but the point is immaterial here because the court peremptorily instructed the jury that a violation of the statute would not warrant recovery by the plaintiffs, and that whatever testimony had been presented in respect to a failure to stop was to be considered by the jury with all the other testimony in the case in determining whether or not the other alleged acts of negligence were committed.

The statute lays an affirmative duty on the driver of a truck or car involved in a collision not to run away but to stop, identify himself, and render such assistance as may be reasonable or necessary; but in this instance the identity of the driver was discovered without trouble or expense, and there was no damage that resulted from want of reasonable or necessary assistance to the injured party. Therefore, the driver was not liable for failure to stop even if he did run away; but he denied that he ran away, claiming that he was on the right side of the road and was not to blame for the collision in any respect. This was also the contention of the owner of the truck. In these circumstances, what the driver did immediately after the collision was relevant only to show whether he knew or thought that he was to blame. The court's instruction on this subject was not prejudicial to the defendants, since it denied recovery for a violation of the statute and left to the jury only the question as to whether the conduct of the driver after the injury tended to incriminate him or to discredit his testimony. The general rule is that evidence of facts relevant to any issue before the jury is not rendered incompetent merely because those facts reveal that a crime may have been committed.[7] We have been cited to no Georgia statute or decision to the contrary.[8]

The judgment appealed from is affirmed.

---

[6] Sec. 68-308, Georgia Code of 1933.

[7] Vol. 1, Wigmore on Evidence, Sec. 216, pp. 457 et seq. The rule is the same for criminal as for civil cases. P. 458.

[8] Springer v. Adams, 37 Ga.App. 344, 140 S.E. 390, is relied upon by the appellants, and Battle v. Kilcrease, 54 Ga.App. 808, 189 S.E. 573, by the appellees. The latter case was examined and distinguished by the Supreme Court of Georgia in Georgia Power Co. v. Shipp, 195 Ga. 446, 24 S.E.2d 764, 766, wherein the court said: "The statute is a penal one. * * * Its violation was made a crime, and as written the penalty is assessed only against the operator, without reference to the owner of the vehicle involved or the employer of the driver, as the case may be. 'Unless otherwise provided, such a statute applies only to the operator of the motor vehicle, and does not create any liability on the part of the owner who is not the operator; if, however, the owner is present and the vehicle is being operated under his control, he is liable for non-compliance with the statute, unless the operator disobeys his instructions.' 42 C.J. 385, § 1450. The provisions of a statute simi-

HUTCHESON, Circuit Judge (dissenting).

I cannot agree with the view of the majority that Osborne's testimony was admissible, nor with their view that it was not prejudicial and reversible error to charge on and read to the jury the Georgia Hit and Run Statute.

As to Osborne's testimony, it seems clear to me that, though not true hearsay because "not an unsworn statement" [1] but the sworn testimony of Osborne, his testimony was res inter alios acta, offered for the purpose of bolstering plaintiff's testimony, and it, therefore, constitutes a self serving verbal act or occurrence transpiring out of the presence of the defendant and having no relevancy or materiality to the inquiry. [2] This inquiry was at what speed Snyder was traveling, and it ought to be clear that a statement made to him that it would be dangerous to him or his car to travel at too fast a speed could have no probative value whatever in determining how fast he actually drove. The Georgia Statute, Article 2, c. 2, tit. 6, Georgia Civil Code of 1910 of Hearsay; Chapt. 38-3, Code of 1933, Hearsay, on which the majority rely, has no application here. That applies where conversations, etc., "are facts to explain conduct and ascertain motives." The statute does not make such conversations, etc. admissible to establish conduct or to prove that something was or was not done. It comes into play where conduct is established and the inquiry is not the what but the why of the conduct. The Georgia statute thus establishes no different rule from that prevailing generally. It certainly does not support the view of the majority that caution or advice to a driver not to go too fast can be admitted as having any probative effect to support his claim that he went at a moderate rate of speed. If this is the law, drivers would be well advised, before starting out on any automobile journey, to receive many cautionary admonitions and to make many professions of fine intention as to their speed, for, in the event of a collision, they will find them very present helps in time of trouble. It should not be necessary to cite authorities. The very statement of the proposition, I think, should be sufficient to establish its unsoundness. A case from Georgia precisely in point, however, is Bibb County v. Williams, 152 Ga. 489, 110 S.E. 275.

Notwithstanding this view, that the admission was error, I should not vote to reverse for it if the trial were otherwise errorless. For, while it was offered with the definite purpose of disputing the contention of defendant's driver, that the Snyder car was coming around the curve at fifty miles per hour and of bolstering the plaintiffs' contention that its speed was not over thirty-five miles, the statement offered was not unsworn but sworn to, and it was neither hearsay nor, in the sense of a hearsay declaration, self serving. In addition, there was competent and relevant evidence in support of plaintiffs' theory, and I think it cannot be reasonably said that the admission was prejudicial. But this was by no means the only error. There was the serious, the very prejudicial error of charging and reading to the jury the Hit and Run Statute. [3] It is true that

---

lar to that under consideration were invoked in a civil action for the death of a boy struck by a truck, in the case of Nager v. Reid, 240 Mass. 211, 133 N.E. 98, where it was held: 'Section 24 of G.L. c. 90, making it a criminal offense for the driver of an automobile to go away without stopping and making known his name, residence and the number of his vehicle, after knowingly causing injury to a person, relates only to the operator, and does not create any liability, criminal or civil, on the part of an owner who is not the operator.' In our investigation we have examined Battle v. Kilcrease; 54 Ga.App. 808, 189 S.E. 573 and, without regard to the soundness of certain statements made

in division two of the opinion in that case, we do not consider that the rulings there made are applicable to facts such as here presented."

[1] Chamberlayne's Modern Law of Evidence, Vol. 4, Chapt. 37, Unsworn Statements, Independent Relevancy, Sec. 2574, et seq.

[2] Chamberlayne's Modern Law of Evidence, Vol. 4, Chapt. 47, Relevancy of Similarity, Sec. 3208.

[3] "Here is another code section, gentlemen: 'In case of accident to any person or damage to any property upon the public street or highway, due to the operation of a motor vehicle, tractor, or trailer thereon, the operator of such machine

the Georgia Courts of Appeal are not in agreement on whether, in an automobile collision, the violation of the statute can be considered upon the issue of negligence vel non, Springer v. Adams, 37 Ga.App. 344, 140 S.E. 390 holding that it cannot, Battle v. Kilcrease, 54 Ga.App. 808, 189 S.E. 573, holding that it can. But it is also true that the Battle case was examined by the Supreme Court in Georgia Power Co. v. Shipp, 195 Ga. 446, 24 S.E.2d 764, and that there the court said of the statute and of the Battle case:

"The statute is a penal one. * * * Its violation was made a crime, and as written the penalty is assessed only against the operator, without reference to the owner of the vehicle involved or the employer of the driver, as the case may be. 'Unless otherwise provided, such a statute applies only to the operator of the motor vehicle, and does not create any liability on the part of the owner who is not the operator; if, however, the owner is present and the vehicle is being operated under his control, he is liable for non-compliance with the statute, unless the operator disobeys his instructions.' 42 C.J. 385, § 1450. The provisions of a statute similar to that under consideration were invoked in a civil action for the death of a boy struck by a truck, in the case of Nager v. Reid, 240 Mass. 211, 133 N.E. 98, where it was held: 'Section 24 of G.L. c. 90, making it a criminal offense for the driver of an automobile to go away without stopping and making known his name, residence and the number of his vehicle, after knowingly causing injury to a person, relates only to the operator and does not create any liability, criminal or civil, on the part of an owner who is not the operator.' In our investigation we have examined Battle v. Kilcrease, 54 Ga.App. 808, 189 S.E. 573, and, without regard to the soundness of certain statements made in division two of the opinion in that case, we do not consider that the rulings there made are applicable to facts such as here presented."

In Hurst v. The State, 39 Ga.App. 522, 147 S.E. 782, 783, a criminal case brought for violation of the statute, the court said:

"It is proved that a defendant, knowing of an injury that he has inflicted, deliberately refuses to stop or assist his victim, this fact may be considered as evidence of a malignant heart, and as an aggravating circumstance which may be taken into consideration in determining the defendant's guilt and fixing his punishment."

It thus appears that under the settled law in Georgia, the statute is a penal one, and its violation is regarded as evidence of a malignant heart and the basis for punitive action on the part of the jury. Though plaintiffs had charged the defendants with violation of the statute, appellants were not on trial for its violation. Whether either of them was guilty of an offense under the statute was not an issue in the case, and if there had been evidence tending to show a violation of the statute, it would seem under these decisions that it would be error of a highly prejudicial kind to charge the statute in the case. It is not necessary, however, for us to so decide. If it could be charged in any negligence case, where there was evidence that the statute had been violated, it is quite plain that this is no such case, for here no evidence of its violation was presented. When

shall immediately stop, and, upon request of the person injured or sustaining damage thereby, or of any other person present, give such person his name and address, and if he is not the owner of such vehicle, then in addition the name and address of the owner thereof, and further he shall render such assistance as may be reasonable or necessary.'

Now, I read you that code section because it is pleaded by the plaintiff—it is denied by the defendant—and there has been some testimony introduced touching or in respect to this statute. I charge you, gentlemen, in connection with this statute here that I have just read, that a violation of this statute by the defendants in this case would not warrant a recovery by the plaintiff. Whatever testimony has been presented to this jury in respect to a failure to stop at the scene of the accident —and it is for the jury to say whether the defendant stopped or failed to stop—is to be considered by the jury in connection with all of the other testimony in the case in determining whether or not the other acts of negligence that are set forth in the plaintiff's petition were done or not. As I say, a failure or a violation of this failure to stop section would not warrant a recovery."

then the judge charged upon it, no matter what efforts he made to soften the charge, he put before the jury, without any evidence to justify its putting, the issue inevitably raised by the language of, and the feeling about, the statute, whether Hudson was a despicable hit and run driver.

No witness testified to a violation of the statute by the driver or to any fact from which a violation could be inferred. The driver and six other witnesses, including the night policeman in Milledgeville, testified positively that the driver did not hit and run as prohibited by the statute, but, on the contrary, he stopped, reported the accident, and went back to the scene of it to do what he could to tender assistance, only to find, what the uncontradicted evidence shows, that the injured person did not remain at the place of the collision, but was immediately driven away.[4] It is the rule in Georgia, as elsewhere, that "the affirmative

and positive testimony of witnesses as to the actual facts or a particular occurrence cannot be overcome by testimony which is negative in character, or consists of mere opinions." Hambright v. Western & Atlantic R. Co., 112 Ga. 36, 37 S.E. 99; English v. Georgia Power Co., 66 Ga.App. 363, 17 S.E.2d 891. If, therefore, the testimony of plaintiffs' witnesses, negative in character as it was, had sought to put in issue the question of the statute's violation, it could not have done so against the positive evidence to the contrary. But giving the evidence full effect, it did not purport to show that the defendant ran away and refused to give assistance. It went no further than a statement that he did not stop immediately. Such proof, without more, would not constitute a violation of the statute.

In these circumstances, to read the Hit and Run Statute to the jury and to charge

[4] Hudson, the truck driver, testified that he stopped as quickly as he could do so with safety and went back down the highway looking for the car. Burgamy, the only disinterested eye witness, swore that the truck stopped and he went back down the highway with the driver. Lonnie Brantley entirely disinterested, who was awakened by the crash and whose bedroom window was within 20 feet of the highway, watched the truck as it stopped and saw the driver and another man walk down the highway. C. C. Miller, an equally disinterested witness, whose store was on the curve and who also was aroused by the crash, saw the truck come to a stop. M. D. Haines, likewise disinterested and who lived across the highway from Miller, swore that the truck stopped.

W. R. Smallwood, the driver of another truck going toward Milledgeville after the accident, reached the scene of the accident very shortly after it happened and brought Hudson into Milledgeville where they located H. G. Posey, the night policeman in Milledgeville. Posey testified that Hudson told him about the accident and he instructed Hudson to call the sheriff of Baldwin County when he learned that the accident had happened outside the city limits, and Posey was present when the sheriff was called from his telephone. The sheriff of Baldwin County was dead at the time of the trial, but Osborne, the next friend of the plaintiffs, admitted on cross examination that on the day after the accident the sheriff told him (Osborne) the name of the truck company and the driver.

Five disinterested and unimpeached witnesses supported the story of the truck driver completely. It was undisputed that Snyder stopped only momentarily. Therefore, it was beyond Hudson's power to have rendered any assistance in getting Snyder to the hospital.

After this positive affirmative unimpeached evidence the plaintiffs offered the following negative testimony:

Mrs. Wood, the sister of the decedent, testified, not that the driver had hit and run away but merely that she looked back after they had come to a stop and after she had found her brother's arm was hurt and after Pryor, who was in the car with them, asked her to look back, but did not see the truck.

Pryor testified: "I did not have time to look and did not want to take time. I wanted to get him to the hospital. I walked around the front of the car . . When I asked Mrs. Wood to look she certainly did. He did not stop, or she told me she did not see him."

Mrs. Doris Johnson, who was awakened by the crash and in front of whose home Snyder brought his car to a stop, testified that she went to her window, but did not raise it and put her head out, doesn't know how far up the road she looked. She testified further: "I suppose our house is 40 or 50 feet back from the paved portion of the highway, and Mr. Brantley's house is within 10 or 15 feet. He is right on the road, his house is between me and my view up toward Miller's store. You can see up to the dirt road but you cannot see in front of his store."

on it was to tell the jury that it was legitimate for them to consider whether there was evidence that the driver had committed the contemptible crime of injuring somebody and then running off and refusing assistance. It was no protection for defendants, after the court had dragged the crime statute in, to advise the jury that their finding that it had been violated would not authorize the jury to find the driver was negligent, for this was coupled with the statement that the fact that he had violated it could be considered as evidence that he was negligent, and far worse, the poison of the statute had already been injected. To charge the statute in a case of death by collision with a truck, where there was no evidence whatever to support the issue, was not only error but prejudicial error of the greatest kind. Verdicts gotten by such error induced by plaintiffs, ought not to be permitted to stand. If there was negligence and the plaintiffs are entitled to a verdict, such a verdict ought not to be wrested or influenced by prejudicial error. It ought to come in as the result of a fair and just trial, from which extraneous and prejudicial matters are rigorously excluded. I think the judgment ought to be reversed for this error. I dissent from its affirmance.