JOHN J. O'CONNELL, administrator, *vs.* ESSO STANDARD OIL COMPANY.

Suffolk.    May 7, 1958. — June 3, 1958.

Present: WILKINS, C.J., RONAN, COUNIHAN, WHITTEMORE, & CUTTER, JJ.

*Negligence,* Motor vehicle, Violation of law.    *Law of the Road.*

Evidence that when a collision occurred between an automobile being driven south at night on a wide street by the plaintiff's decedent and the defendant's automobile as it was being driven north thereon the defendant's automobile was at least nine feet to the east of where it had been when its operator first saw the decedent's automobile ninety or one hundred yards away and that after the impact the defendant's automobile came to rest with its front end slightly to the west of the middle of the traveled part of the street did not warrant an inference, dependent on an assumption that the impact occurred at the place where the defendant's automobile came to rest, that the operator of the defendant's automobile must have been driving to his left of the middle, or a finding of negligence on his part through violation of G. L. c. 89, § 1.

TORT.    Writ in the Superior Court dated March 7, 1951.

The action was tried before *Sgarzi,* J., a District Court judge sitting under statutory authority.

*Samuel P. Sears,* (*Lawrence R. Cohen & Albert R. Mezoff* with him,) for the defendant.

*Francis J. Roche,* (*Francis E. Kelly & Thomas C. Dolan* with him,) for the plaintiff.

RONAN, J.   This is the defendant's exception to the re-
fusal to grant a motion for directed verdicts on three counts,
one for the death of the plaintiff's intestate, a second for
conscious suffering, and the third for damage to an auto-
mobile, which arose out of a collision between an automobile
driven by the intestate and one operated by the defendant's
servant.   The accident occurred on Washington Street in
that part of Boston called Jamaica Plain at about 10:30
P.M. on January 25, 1951.   At the time of the accident, the
defendant's servant, one Donovan, was driving the de-
fendant's automobile along Washington Street in a northerly
direction, while the automobile driven by the intestate,
one O'Connell, was proceeding southerly toward the center
of Forest Hills.   Washington Street is a paved street with
two sets of street car tracks in its approximate middle and
with an overhead elevated structure supported by steel
beams resting upon both sidewalks.   The width of the street
is not disclosed by the record, but it is apparent from the
various photographs put in evidence that there is ample
space for the passage of vehicular traffic on that part of the
street located to the east or west of the car tracks.

Donovan who was driving northerly toward Green Street
testified that he first saw the O'Connell automobile approach-
ing in a "zigzag" manner at approximately fifty miles per
hour when it was ninety to one hundred yards away, and
that he was then travelling about twenty-five miles an hour
with his front left wheel just over the easterly car track.
Donovan also testified that as soon as he discovered the
O'Connell automobile he decreased his speed and drove to
his right or easterly side, so that at the time of the impact
he was nine feet nearer the easterly curbing, when the
O'Connell automobile suddenly turned ninety degrees to
the east, struck the front of the defendant's automobile,
and then continued over the easterly sidewalk and stopped
with its front against the fence on the easterly property line.

One McLaughlin, a police officer, who arrived at the scene
of the accident shortly after its occurrence, drew a sketch
upon a blackboard, a photograph of which has been pre-

sented with the argument and which eliminated all lines made by witnesses other than McLaughlin. It purported to show the center line of Washington Street located between the two sets of electric car tracks with the front end of the defendant's automobile projecting very slightly over this line.

One Santilli, who had been following the defendant's automobile for two thousand feet, testified that the defendant's automobile had never left its right hand side of the street. He testified further that he saw the O'Connell automobile approaching and "swaying on the center car track" and then make a sharp turn to the east where it collided with the defendant's automobile, on the easterly side of the street about five or six feet from the east curb. Two passengers who were riding with Santilli testified that the O'Connell automobile swerved to its left and cut in front of the defendant's automobile.

There was also testimony by one Chubbuck, who was travelling south, and his daughter-in-law to the effect that O'Connell had been driving very erratically up Washington Street when they first observed him at the intersection at Green Street. Chubbuck's son testified that when they came to the accident scene he saw a flash of light from the headlights of the O'Connell automobile upon the MTA garage which was on the easterly side of the street. He further testified that the O'Connell automobile was up against the wire fence while the defendant's vehicle was on the easterly side of the street at a forty-five degree angle. There was also testimony that O'Connell's automobile had struck the rear left bumper of the Chubbuck automobile when the traffic light changed at Green Street.

The plaintiff contends that the defendant's automobile was travelling on its left of the way in violation of G. L. c. 89, § 1, which provides that "When persons traveling with vehicles meet on a way, each shall seasonably drive his vehicle to the right of the middle of the traveled part of such way . . . ." He contends that since, shortly after the

accident, part of the defendant's automobile was to its left
of the middle of the way, and since, when the impact oc-
curred, the defendant's automobile was at least nine feet
to the right of where it had been when Donovan first saw
the decedent's automobile, an inference is warranted that
Donovan was travelling in the left or westerly portion of the
road. But this argument depends on an assumed fact that
the impact occurred where the defendant's automobile came
to rest. Of course, the jury did not have to believe the
testimony of apparently disinterested witnesses that the
defendant's automobile never left its right side of the street
at any time prior to the accident, and they were not re-
quired to accept testimony which placed the point of impact
from five to six feet from the easterly curb, but disbelief
of that testimony is not proof of the contrary. *Cruzan* v.
*New York Cent. & Hudson River R.R.* 227 Mass. 594, 597.
*Boice-Perrine Co.* v. *Kelley,* 243 Mass. 327, 330. *Buckley*
v. *Railway Exp. Agency, Inc.* 323 Mass. 448, 451. *Stuart* v.
*D. N. Kelley & Son, Inc.* 331 Mass. 76, 78. The plaintiff
must rely on the sketch of McLaughlin, but the sketch alone
does not show the point of impact. There was no evidence
of broken glass, metal parts, tire marks, skid marks, oil or
anything else that would indicate the place of collision on
the way. See *Jackson* v. *Anthony,* 282 Mass. 540; *Curtin*
v. *Benjamin,* 305 Mass. 489, 492; *Boutillier* v. *Wesinger,*
322 Mass. 495; *Turcotte* v. *DeWitt,* 332 Mass. 160. The
damage to the decedent's automobile as shown by the
photographs was confined to the middle of the right side of
the body. It is difficult to see how such damage could have
been incurred unless the O'Connell automobile was attempt-
ing to pass in front of the defendant's automobile. In any
event, the slight projection of the front end of the defend-
ant's automobile over the center of the road after the
impact, according to McLaughlin's testimony, does not
warrant the inference that the impact occurred on the west-
erly portion of the road and it certainly would not support a
finding that the defendant's servant was travelling on the
westerly portion of the way at the time of the collision.

*Nager* v. *Reid,* 240 Mass. 211, 214. *Goodloe* v. *Jo-Mar Dairies Co.* 163 Kans. 611, 619. See *Burger* v. *Fischer Baking Co.* 338 Pa. 110; *Schalow* v. *Oakley,* 18 Wash. 2d 347, 353. Cf. *Mitchell* v. *Atkins,* 192 N. C. 376. Since the jury would not be warranted in drawing an inference that the defendant's servant was travelling at the time of the accident in violation of G. L. c. 89, § 1, there was no evidence of any negligence of Donovan. *Nager* v. *Reid,* 240 Mass. 211. *Ellis* v. *Ellison,* 275 Mass. 272. *Boyd* v. *Mills,* 278 Mass. 132. *Carney* v. *Casey,* 302 Mass. 73. *Luvera* v. *DeCaro,* 317 Mass. 222. *Woods* v. *DeMont,* 322 Mass. 233. *Cleary* v. *St. George,* 335 Mass. 245. Cf. *Hubbard* v. *Conti,* 321 Mass. 743; *Barow* v. *Modoono,* 325 Mass. 522; *Hartson* v. *Winship,* 326 Mass. 380.

The motion for directed verdicts should have been allowed.

> *Exceptions sustained.*
> *Judgment for the defendant.*