### 201. CENTURY BUILDING COMPANY *v.* LEWKOWITZ.

1. A corporation is responsible for the acts of its agents in the business of their employment, just as an individual is liable; and whether the agent was acting within the scope of his employment, when he committed a tortious act, is a question of fact for the jury.
2. One has the right, by himself or his agent, to protect his property and his tenants from acts of malicious mischief or trespass, but he is responsible for the manner in which such right is exercised, and is liable for any injury inflicted, beyond the limits of reasonable force, in prevention or protection.
3. The evidence in this case, pertinent to the foregoing well-established principles of law, is weak and barely supports the verdict, but the trial judge was satisfied.

Action for damages, from city court of Atlanta—Judge Reid. January 7, 1907.

Argued February 27,—Decided April 25, 1907.

*J. L. Mayson, W. P. Hill,* for plaintiff in error.

*Burton Smith, Lawton Nally,* contra.

HILL, C. J. The record in this case shows that the Century Building Company, of Atlanta, the plaintiff in error, is a corporation owning and operating an office building. Ingress and egress into and from the building is by revolving doors, and boys were in the habit of interfering with the doors, preventing their revolution, and obstructing free passage into and out of the building; and these acts of trespass not only interfered with the convenience of those who had business there, but were in a

measure attended with danger.    An employee of the building
company arrested the defendant in error, a boy about twelve
years of age, charging him with interfering with one of the re-
volving doors, in the manner above indicated, and confined him
and his younger brother for a short time in the engineer's room
in the basement of the building, and also for a short time in the
vault of the building, while he went out in search of a police officer
to take them into custody.    There was some conflict in the evi-
dence as to whether the boy arrested, the defendant in error, was
at the time of his arrest interfering with the revolving door; and
there was also conflict as to the length of time he had been con-
fined in the engineer's room and in the vault; and there was also
some conflict as to the comfort of these places of incarceration.
Such conflicts were for the determination of the jury, and were
settled by its verdict.    On the trial of the case for damages
against the defendant corporation for the alleged tort of its serv-
ant, the jury found a verdict in favor of the plaintiff.    A new
trial was asked for and refused.    Two material questions are made
by the record:    (1) Was the tort complained of done by the serv-
ant in the prosecution and within the scope of the master's busi-
ness?    (2) If done within the scope and in the prosecution of
the master's business, were the acts justifiable under the facts?
To the proper determination of these questions a consideration
of the testimony is necessary.

1. Were the acts complained of done by the servant within the
line of his employment and within the scope of the master's busi-
ness?    As illustrating this point, the secretary and treasurer of
the company testified that the business of the servant in question
was to see that the elevators in the building were run properly,
and look after the building around there generally.    As to preserv-
ing order in the building, the witness did not know whether the
employee had any instructions.    He was around there looking af-
ter it.    When beggars come in there, which is against the rules,
he goes to them and asks them to get out.    If boys or any one else
were making a disturbance, interfering with the passage or gate-
way, witness thinks the servant would speak to them about it.    He
did not know whether he was expected to keep order in the build-
ing, or to prevent children from playing in and about there, caus-

ing a disturbance. Witness had seen him do those things around there; never had seen the servant in question stopping boys from riding on the elevator or the revolving doors in front; but witness instructed him, if he saw them doing such acts, and could not stop them, to get a police officer and have them put out. On one occasion the witness met the servant in the hall of the building and was told by him that the boys were again riding around the doors and that they were going to hurt somebody, as they had hurt a lady a short time before, and he could not do anything with them; and witness told him to get a policeman and have them arrested. Said servant reported to the witness that he had gotten after the boys about interfering with said revolving doors, and witness made no objection to his doing so. There was some question made as to whether this witness was the proper official of the corporation to give instructions to the servant as to his duties. Another official connected with the company, as general superintendent of the building, and who employed the servants generally, including the one in question, testified, in substance, that it was the duty of said employee to keep beggars and loafers and people of that kind out of the building, especially to keep them out of the elevators; and that, as to people of that character who were making themselves disorderly, it was his duty, when he found them, to ask them to get out of the building; and if they refused to obey, his authority would be practically ended. The employee himself testified, that his business was watching the elevators, and that he arrested the boys to keep them out of the door, and that his act in arresting the boys was done for the good of the building.

This was substantially all of the testimony for the plaintiff on the point now under consideration; and it does not by any means make a strong case in favor of the contention that the act in question was within the scope of the servant's employment and in the prosecution of the master's business. Whether the servant was acting within the scope of his employment, when he committed the acts complained of, was for the determination of the jury; and although the evidence was weak, and even preponderated against the affirmative view of the question, there is no complaint that it was not fairly submitted to the jury by the court; and the trial judge was satisfied with the jury's solution. Where there is any evidence at all to support the verdict, this court has no legal au-

thority to set it aside.   If the acts complained of were within the scope of the servant's employment and in the prosecution of the master's business, it is needless to say that, under the law, the master would be liable, unless such acts were justifiable.   The Civil Code, §3817 declares that the master shall be liable for the torts of his servant, when done in the prosecution and within the scope of his business, whether the same be by negligence or voluntary.   There are many decisions of our Supreme Court and of other courts elucidating the general principle declared in this section, but we think the law therein declared is clear, and needs no judicial interpretation.   It is only necessary to show its applicability to the facts proved in each particular case.

2.   Were the acts of the servant complained of justifiable under the facts in this case?   Unquestionably the defendant corporation had the legal right to protect its property from trespassers.   It had the right to prevent any unlawful interference with its revolving doors and to procure the lawful arrest and to prosecute for disorderly conduct any one interfering with the doors; and it had the right, through its employees, to use such force as was reasonably necessary to prevent any such interference or trespass.   The existence of such right is well established.   The manner of its exercise is the only question about which there can be a possible issue.   Whether in doing the acts authorized by law the company, by its servants, exceeded its authority, and in turn committed a trespass, was exclusively for the determination of the jury.   No rule of law can be laid down of universal application.   Whether the arrest in this case, and the incarceration of the boy in the engineer's room and in the vault of the building, was justifiable, depends entirely on the facts of the case.   It is not claimed that these questions were not fully and fairly submitted to the jury by the court.   We can not say that the jury exercised their exclusive function unwisely or unjustly, or that their verdict does not find some support, although weak, in the evidence.

*Judgment affirmed.*

POWELL, J., dissenting.   I can not agree that under the facts the master was responsible for the tort of this servant.   To hold the owners of the building liable for an arrest made by an elevator starter, when the nearest approach to authority given him to that end by the master was an instruction that if trespassers continued

to interfere with the doors he should call a policeman, is to extend the rule of master's liability for torts of a servant to a degree, to my mind, unwarranted by the law. I can concede the correctness of the decision in the case of *Southern Ry. Co.* v. *James,* 118 *Ga.* 340; and yet I think that case is considered an extreme one by the bench and the profession. The majority opinion in the case at bar extends the master's liability much further than even the *James* case warrants. If the owners of the building had instructed this elevator starter to arrest trespassers, and he had made the mistake of arresting one not a trespasser, the case would fall within the rule in the *James* case. But the employee here was given no authority to make arrests; he was instructed to call a policeman, and, instead of doing so, he, on his own responsibility, undertook to make the arrest himself. If a neighbor's cows are in the habit of breaking into a farmer's field and the latter should say to his hired man, "Watch out for the cows, and, if they break in, go and notify the neighbor," and, instead of doing this, the hired man takes a gun and shoots the cows, is the farmer liable? If I go out from home and tell my hired boy to take care of the premises, and, if burglars or trespassers come while I am gone, to telephone for the police, and he, seeing some one in the yard, shoots him, am I responsible for the assault or homicide? If not, the owners of the building are not justly held responsible in this case. I must express my dissent to what I believe to be a dangerous doctrine, about to be made the judgment of this court. I think this case is controlled by *Fire Association* v. *Fleming,* 78 *Ga.* 733, and *Wikle* v. *L. & N. R. Co.,* 116 *Ga.* 309, and that there should be a reversal.