1287.    SAVANNAH ELECTRIC COMPANY *v.* HODGES.

If a servant steps aside from his master's business, for however short a time, to do an act entirely disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not liable.

Action for damages, from city court of Savannah—Judge Freeman. June 29, 1908.

Argued October 28, 1908.—Decided July 31, 1909.

*Osborne & Lawrence,* for plaintiff in error.

*O'Connor, O'Byrne & Hartridge,* contra.

RUSSELL, J.    Hodges sued the Savannah Electric Company for damages arising from personal injuries. It appears that he was a conductor upon the Montgomery and Best street line of the defendant company. At the time of the injury his car was standing at the terminus of the line and within ten feet of a repair or "wire" car, which was waiting to follow the passenger-car into the city. He got off of his car to change the trolley, in order to make ready for the return journey. He thus came between the two cars. Baker, a servant of the defendant on the repair or "wire" car, struck at him, and in doing so knocked the controller and thus started the car, which struck him and inflicted the injuries for which he sued. There is conflict in the evidence as to whether the plaintiff joined in "skylarking," "joshing," or other play with Baker or other employees of the defendant. There is no conflict, however, as to the fact that Baker started the car, not intentionally but by striking at the plaintiff in a playful manner. We deem it immaterial, therefore, whether the plaintiff participated in the play and knew that Baker was going to strike at him, or not, because the real question in the case is whether the defendant company is liable for the stroke of Baker which was the cause of the starting of the car and the resulting injury to the plaintiff. The

controlling question, presented both by the motion to nonsuit and by the motion for a new trial, is whether a servant can recover from his master for an injury which the undisputed evidence shows was caused by an act of a fellow servant not within the scope of his duties, and yet while in the employment of the master and while waiting to recommence the active duties of his employment. Nothing is better settled than that the master is liable for injuries resulting from his servant's negligent performance of his duties, or from a negligent omission to perform his duties, provided that the act causing the injury or the omission to act is within the scope of the servant's employment. We confess that the line of demarcation between those instances where the master should be held liable and those instances where the injury would seem to be the result of an independent, voluntary act of the servant, is so dim that it is frequently a matter of difficulty to classify the cases and determine upon which side of the line a particular transaction falls.

It is contended by the learned counsel for the defendant in error with much force and ability that since Baker was in the employment of the defendant and in charge of a dangerous instrumentality, and it being his duty to see that the car for the conduct of which he was responsible was not moved, in moving it or allowing it to be moved he was guilty of such negligence as renders the master liable; and furthermore, that if Baker engaged in "skylarking" and thereby omitted to perform the duty of guarding the car, and by reason of this omission the car was negligently started and the plaintiff injured, the defendant would be liable. There can be no question that if the plaintiff's injury was the result of any act or omission of Baker, either in the performance of his duties or preparatory to the performance of his duties, the defendant would be liable, whether the act or omission was intentional or unintentional, and generally, perhaps, even if the act or omission to act was due to ill feeling or personal resentment. In the last-mentioned class fall such cases as *Gasway* v. *Atlanta & West Point R. Co.*, 58 *Ga.* 216; *Georgia Railroad Co.* v. *Richmond*, 98 *Ga.* 501 (25 S. E. 565); *Columbus & Rome Ry. Co.* v. *Christian*, 97 *Ga.* 56 (25 S. E. 41); *Savannah Electric Co.* v. *Wheeler*, 128 *Ga.* 550 (58 S. E. 38, L. R. A. (N. S.) 1176). It is settled as to railroad companies that they are liable for the torts of their con-

ductors and other servants when such torts are committed in connection with the business entrusted to them, and spring from and grow immediately out of such business. *Gasway* v. *Atlanta & West Point R. Co.,* supra; *Central Railroad* v. *Gleason, 69 Ga.* 200; *Peeples* v. *B. & A. R. Co.,* 60 *Ga.* 284; *Georgia R. Co.* v. *Newsome,* 60 *Ga.* 493. In *W. & A. R. Co.* v. *Turner, 72 Ga.* 294, it is held that railroad companies are liable for torts committed by their servants in the transaction of the business and within the scope of the duties entrusted to them, whether the same be negligent or voluntary. These well-settled rulings, however, are not applicable to the case at bar, because another element enters into this case, which is the question whether or not the master is liable where the act of the servant is not connected with the business entrusted to him, or in furtherance of that business. This is not a case involving the question as to whether the master has been negligent in the selection of his servants, nor is it a case where the act was done under the immediate direction and control of the master.

What, then, is the test by which it should be determined whether the act of the servant was within the scope of his employment? Judge Thompson, in his Commentaries on the Law of Negligence, volume 1, § 526, says: "The test by which to determine whether the master is liable for the tortious act of his servant is not whether it was done during the existence of the employment, that is to say, during the time covered by the employment, but whether it was done in the prosecution of the master's business. Upon this subject it has been said: 'In determining whether a particular act is done in the course of the servant's employment, it is proper first to inquire whether the servant was *at the time* engaged in serving his master. If the act be done while the servant is at liberty from the service, and pursuing his own ends exclusively, the master is not responsible. If the servant was, at the time when the injury was inflicted, acting for himself and as his own master *pro tempore,* the master is not liable. If the servant steps aside from his master's business, *for however short a time,* to do an act not connected with such business, the relation of master and servant is for the time suspended. Such, variously expressed, is the uniform doctrine laid down by all authorities." This doctrine is not in conflict with any of the rulings made by the Supreme

Court in the cases relied on by counsel for the defendant in error. In any case where there appears to be a conflict, it will be seen on examination that the apparent conflict is due to the fact that negligence was imputed to the master in the selection of incompetent or vicious servants, but no such negligence is alleged or relied on in the present case. The case of *Savannah Electric Co.* v. *Wheeler,* supra, furnishes an instance of this kind, but in the case of Haehl *v.* Wabash. Ry. Co., 119 Mo. 325 (24 S. W. 737), which is cited by the Supreme Court in the *Wheeler* case, the test laid down by Judge Thompson was acted upon. The *Wheeler* case may also be distinguished from the case at bar by reason of the fact that the conductor who shot the person injured was at the time engaged in the act of collecting fares. He was acting within the scope of his duties and in the prosecution of the master's business, and the difficulty which resulted in the injury was caused by the conductor's refusal to return change to a passenger. In the Haehl case, supra, the Supreme Court of Missouri adopted, as a part of the opinion, an extract from the brief of counsel for respondent, as follows: "The principle of respondent superior applies only when what is complained of was done in the course of the employment. The principal is responsible, not because the servant has acted in his name or under color of his employment, but because the servant was actually engaged in and about his business, and carrying out his purposes. He is then responsible, because the thing complained of, although done through the agency of another, was done by himself; and it matters not in such a case whether the injury with which it is sought to charge him is the result of negligence, or of unskilful or wrongful conduct, for he must choose fit agents for the conduct of his business. But if his business is done, or is taking care of itself, and his servant not being engaged in it, not concerned about it, but impelled by motives that are wholly personal to himself, and simply to gratify his own feeling of resentment, whether provoked or unprovoked, commits an assault upon another, when that has and can have no tendency to promote any purpose in which the principal is interested, and to promote which the servant was employed, then the wrong is purely the personal wrong of the servant, for which he, and he alone, is responsible."

Nor does the shortness of the time during which the servant

had stepped aside from the business of the master lead to a different result. It is true, as argued by counsel for the defendant in error, that the servant in the present case was engaged in the service of his master for the purpose of guarding the car, in order to keep it from moving until the passenger-car had started and was safely out of the way; but as we view it under the evidence, he stepped aside in a business of his own when he engaged in the act of endeavoring to strike the plaintiff, whether the striking was in play or in anger; for it matters not what his purpose, this act was not in the prosecution of the business of the master. It was not an act in furtherance of or in prosecution of any business which devolved upon him by virtue of his relation as servant of the defendant. If Baker had started the car, which it was his duty to guard while the plaintiff was between the two cars, negligently or intentionally, in furtherance of the master's business or in line of his duty, the defendant would be liable. But it is clear from the evidence that the controller was not turned negligently or intentionally, but was struck accidentally. The undisputed evidence, therefore, shows that the underlying cause of the casualty was accidental. It was by accident that the controller was turned, and the accident occurred while Baker was not engaged in the duty with which he had been charged by his master, but during a period, however short, in which he had stepped aside and was engaged in a prank with one of his co-employees. Similar cases in which it has been held that the master is not liable for the independent and voluntary act of the servant outside the scope of his duties are too numerous for citation. We may refer, however, to Goodloe *v.* Memphis R. Co., 107 Ala. 233 (54 Am. St. R. 67, 29 L. R. A. 729, 18 So. 166), in which it was held that the doctrine of respondeat superior "has no application when the servant actually wills and intends the injury, or steps aside from the purpose of the agency committed to him, and inflicts an independent wrong." In the well-considered opinion of Haralson, J., in that case the learned judge cites a large number of cases in support of the principle announced; and in an exhaustive note appended to the report of the case in the American State Reports it is clearly shown that the principle is recognized almost universally, and that the only difficulty arises in the ascertainment of the fact whether or not the servant has in fact stepped aside (no matter for

how brief a time) from the duties assigned to him, and whether the act performed by him is one within the scope of his employment or one wholly disconnected with such employment. The recent case of Galveston R. Co. *v.* Currie, 100 Texas, 136 (96 S. W. 1074, 10 L. R. A. (N. S.) 367) presents a clear exposition of the principle which controls our judgment in the case.at bar, and it is to be noted that that court relies upon the case of Golden *v.* Newbrand, 52 Iowa, 59 (35 Am. R. 257), which is cited by our Supreme Court in support of the decision in the case of *Georgia Railroad Co.* v. *Wood,* 94 *Ga.* 124 (21 S. E. 288, 47 Am. St. R. 146). The facts of the Currie case were as follows: Nichols was employed by the company as an engine dispatcher in its round-house. He had the care, custody, and control of things used in the round-house for the purpose of getting engines in and out, and his duties required him to have all necessary work done on engines. He had the right to use compressed air in the manner hereinafter stated. It was his duty and the duty of other employees to put out a fire on an engine whenever they saw it. Currie's duties were to clean engines and do whatever was necessary in the round-house. The round-house was supplied with compressed air by pipes leading from a storage tank to each engine. Spahn, a hostler, brought an engine into the round-house, in the ashpan of which oil was burning. Up to this time water had been used to put out a fire, but, no water being present, Spahn decided to try compressed air. He put out the fire, but the cracking noise attracted Nichols and other employees. Nichols directed Spahn to go into the engine to adjust a valve, and held the air hose to put out any fire which might appear. As Spahn ascended the engine Nichols turned the air pipe on him, causing him to jump and the bystanders to laugh. Nichols then turned the hose on Currie, so that the air struck him about the buttocks. The air passed through his rectum, perforated his bowels, and caused his death. Currie's widow brought suit against the company. It was conceded by the court that if Nichols, while using the hose to put out the fire, had negligently turned it on Currie, the defendant would have been liable even though a personal motive had been mixed with it, the master, in Texas as in Georgia, being liable for the wilful as well as the negligent acts of servants when done within the line of duty. In discussing the question of the master's liability under the facts as

stated above, the court said: "The case is controlled, in our opinion, by the proposition, in which all authority agrees, that, when the servant turns aside, for however short a time, from the prosecution of the master's work to engage in an afair wholly his own, he ceases to act for the master, and all the responsibility for that which he does in pursuing his own business or pleasure is upon him alone. Let it be conceded that in holding the hose in readiness to put out any fire that might again flare up Nichols was performing a duty as servant, and that, had he, while thus holding it, or in attempting to use it for the purpose for which it was held, negligently turned it against one of the other employees, his negligence would have been imputable to his employer as incidental to the effort to do that which was in the line of the servant's duty. It may be further conceded that if, in directing the hose at a fire to put it out, he had also struck with it one of the other servants, either to make him get out of the way, or for some other purpose, the motive thus partly influencing his act towards such other would not deprive it of its legal character, as done in the master's business. It is in cases of the character supposed, where there has been a mingling of personal motive or purpose of the servant with the doing of his work for his employer, that much of the difficulty and conflict of opinion have arisen in determining whether or not the wrong committed should be ascribed to the master, or be regarded as the personal tort of the servant alone. It is now settled, in this State at least, that the presence of such a motive or purpose in the servant's mind does not affect the master's liability, where that which the servant does is in the line of his duty and in the prosecution of the master's work. But when he goes entirely aside from his work, and engages in the doing of an act not in furtherance of the master's business, but to accomplish some purpose of his own, there is no principle which charges the master with responsibility for such action. . . The fact that Nichols, while holding the hose, conceived the purpose of using it and did use it upon the employees, in sport, is undisputed, and is wholly inconsistent with any assumption that he was then in any way attempting to serve the defendant. His act was a clear departure, for the time, from that service, and the quickness with which it was done can not be made the test. If the turning aside from the master's business be only for an instant, so that it be

complete, the authorities agree that there is· no liability on his part for the defendant's act." It was upon this principle that the Supreme Judicial Court of Massachusetts held that the master was not liable for damages done to a person who was hit by a bundle thrown by a car porter, the bundle belonging to the porter and being thrown for his own purposes. Walton v. New York etc. Co., 139 Mass. 556 (2 N. E. 101); Burdick on Torts 150. When a servant acts without reference to the service in which he is employed, and not for the purpose of performing the work of his master, but for the purpose of effecting some individual purpose of his own, the master is not responsible for the act or omission of the servant. Stephenson v. Southern Pac. Co., 93 Cal. 558 (29 Pac. 234, 15 L. R. A. 475, 27 Am. St. R. 223); Mott v. Consumers Ice Co., 73 N. Y. 547; Decamp v. Railroad Co., 12 Iowa, 348; Cook v. Railroad Co., 30 Iowa, 212; Mars v. Delaware Canal Co., 54 Hun, 625 (8 N. Y. Supp. 107); Snyder v. Hannibal R. Co., 60 Mo. 413; Cosgrove v. Ogden, 49 N. Y. 257 (10 Am. R. 361); New O., J. & Great Northern R. Co. v. Harrison, 48 Miss. 112 (12 Am. R. 356); Driscoll v. Scanlon, 165 Mass. 348 (43 N. E. 100, 52 Am. St. R. 523); Houston etc. Ry. Co. v. Bolling, 59 Ark. 395 (27 S. W. 492, 27 L. R. A. 190, 43 Am. St. R. 48); Lynch v. Florida Central R. Co., 113 Ga. 1105 (38 S. E. 411, 54 L. R. A. 810); Goodloe v. Memphis etc. Ry., supra. In Howe v. Newmarch, 12 Allen (Mass.), 49, at the conclusion of an elaborate opinion, in which many cases bearing on the subject are considered, the test of the master's responsibility for the acts of his servants is stated as follows: "And in an action of tort in the nature of an action on the case, the master is not responsible if the wrong done by his servant is done without his authority, and not for the purpose of executing his orders or doing his work. So that if the servant, wholly for a purpose of his own, disregarding the object for which he was employed, and not intending by his act to execute it, does an injury to another, not within the scope of his employment, the master is not liable. But if the act be done in the execution of the authority given him by the master, and for the purpose of performing what the master has directed, the master will be responsible, whether the wrong done be occasioned by negligence, or by a wanton or reckless purpose to accomplish the master's business in an unlawful manner." See also Davis v. Houghtellin, 33 Neb.

582 (50 N. W. 765), and note to that case in 14 L. R. A. 737. It is plain to our minds that the injury to the plaintiff was caused by an independent act of one of the defendant's servants not within the scope of his employment, but while he had stepped aside from the performance of his master's business. A verdict in his favor was therefore unwarranted, and the trial judge erred in not granting a new trial.              *Judgment reversed.*