### 29471. SHIPP v. GEORGIA POWER COMPANY.

DECIDED JUNE 29, 1942. ADHERED TO ON REHEARING, JULY 30, 1942.

*Walter A. Sims, Ralph G. Sims,* for plaintiff.

*MacDougald, Troutman & Arkwright, William H. Schroder Jr.,* for defendant.

STEPHENS, P. J. E. E. Shipp brought an action against Georgia Power Company to recover damages because of an assault on him by one of its bus drivers. He alleged that at the time of the assault the servant was acting in the prosecution of the master's business and in the scope of his employment. The evidence showed that after the driver of the bus had stopped his bus alongside the automobile which the plaintiff was driving and had then started off the bus struck the left front fender of the plaintiff's automobile; that the plaintiff then drove his automobile and overtook the bus and stopped alongside it about a block away, holloing to the driver of the bus, "You hit my fender back up the street," and that the bus driver looked at him but drove off without answering; that the plaintiff again overtook the bus and stopped alongside it, whereupon the driver left the bus and came to the door of the plaintiff's automobile, saying "What the hell is the matter with you; are you drunk?" and thereupon assaulted the plaintiff. The plaintiff testified that his sole purpose in following the bus was to inform the driver what he had done to his automobile. It further appeared from the evidence that when the plaintiff first addressed the bus driver the bus driver made no response. The plaintiff and another witness who was present stated that they did not know whether the bus driver heard the plaintiff or not. The plaintiff further testified as follows: "the bus which collided with me was the Georgia Power Company bus. The driver wore a uniform operators regularly wear, with buttons on them with 'G. P. Co.' on them, and cap which operators on both street cars and buses wear. These buses operate regularly on this line, before and since this happened. The number of the bus which struck my automobile was No. 118. I learned since that the operator's name was Tudder." Mrs. McDonald testified that she was in the automobile with the plaintiff and that the bus which hit the fender of the plaintiff's automobile was a Georgia Power Company bus. The court granted a nonsuit and the plaintiff excepted. The evidence as quoted above was suf-

ficient to authorize a finding that a Georgia Power Company's bus ran into the plaintiff's automobile and that the operator of the bus, the person who assaulted the plaintiff, was the servant of the power company in the operation of the bus.

The Code, § 68-308, which is a codification of section 14 of the motor-vehicle act of 1927, amendatory of preexisting acts (Ga. L. 1927, pp. 226, 238), reads as follows: "In case of accident to any person or damage to any property upon the public street or highway, due to the operation of a motor vehicle, tractor, or trailer thereon, the operator of such machine shall immediately stop, and, upon request of the person injured or sustaining damage thereby, or of any other person present, give such person his name and address, and if he is not the owner of such vehicle, then in addition the name and address of the owner thereof."

"Motor vehicle," as defined in the above-cited act (Code § 68-101), is as follows: "Any vehicle, except tractors, propelled by power other than muscular power, not operated exclusively upon tracks." The term "motor vehicle" as thus defined includes a bus, as in the case now before the court, which is propelled by power other than muscular power and is not operated upon a track.

This section is not limited in its application to private motor vehicles, but, by its terms, includes any motor vehicle, whether it is privately owned and operated or is a common carrier. Whether it is implied in this section that it is not applicable to the operator of a motor vehicle along a public street, who is not cognizant of his being the cause of damage to person or property, it certainly is within the contemplation of the statute that a person who suffers damage, either to his person or property, due to the operation of a motor vehicle on a street or highway of this State, has the right, when he is damaged by the operation of such motor vehicle, to obtain from the operator thereof the information referred to in the statute, if the operator is aware of the fact that such damage has been inflicted by him in the operation of the motor vehicle. If the person damaged or injured is entitled to the right to obtain this information from the operator of the motor vehicle causing the damage he certainly has the right, if the operator is not aware of the infliction of the damage, to inform the operator thereof. It is therefore incumbent upon an operator of a motor vehicle along a public street or highway of this State, in the operation of such

motor vehicle as a common carrier, not only to stop his vehicle on the occurrence of an accident or infliction of damage by him in the operation of his motor vehicle, where he is cognizant thereof, but "upon request of the person injured or sustaining damage thereby . . give such person his name and address," and that of the owner. It follows as a corollary that it is within the duties of the operator of the motor vehicle, as the servant of his employer, where he has caused damage to person or property on a highway, and is not cognizant thereof, to receive and accept notice of such damage from the person damaged.

The power company therefore owed the plaintiff a duty to receive from him, through its bus operator, notice that the bus had injured his automobile without the plaintiff's being subjected to personal injury as the result of the giving of such notice to the operator. Whether in this case the driver heard what the plaintiff had said to him is immaterial. If the plaintiff was doing what the evidence shows he was doing, that is, reporting his damage to the driver, and the driver, whether immediately on the plaintiff's endeavor to make this report or afterwards when the driver made another stop, assaulted the plaintiff as the result of his attempt to report the damage to the driver, the power company was liable to the plaintiff in damages therefor. It can not be said that the driver stepped aside from his duties because he did not hear what the plaintiff had said, or because the driver had misunderstood the plaintiff. It was the business of the driver to receive the report, if the report was respectfully made, and it does not appear that the driver could not have ascertained by the exercise of ordinary care what the plaintiff was saying or talking about. It is clearly evident from what the driver said to the plaintiff that the driver had heard the plaintiff say something to him, and it is inferable that the driver heard what the plaintiff said to him. It is a jury question under the evidence and the circumstances as to whether the driver heard what the plaintiff was saying to him.

As was held in *Schwartz* v. *Nunnally Company,* 60 *Ga. App.* 858, 860 (5 S. E. 2d, 91) : "The evidence . . made a question for the jury as to whether the assault was so closely connected with the authorized transaction of the company's business as to render the company liable for the wilful acts of its servants." See also *Limerick* v. *Roberts, 32 Ga. App.* 755 (124 S. E. 806).

The following illustrations are taken from 1 Restatement of the Law of Agency, 550, § 245: "A is employed by P as the driver of an ice wagon, and while he is delivering ice, a number of children annoy him by endeavoring to get pieces of ice. Thereupon A throws a piece of ice at one of them in order to expedite his work. The fact that A also means to cause pain to the child and thereby get revenge for the annoyance does not prevent A's act from being within the scope of employment. A is employed to drive P's automobile. T, a competitor, is passing the automobile which A is driving. A deliberately drives into T's car. Doing this to prevent T from passing, and also because A does not like T. This act may be found to be within the scope of A's employment. In order that the act should be within the scope of employment it must be one which comes within the time and space limits of the employment. The mere fact, however, that the servant acts at the time when, or a place where, he is not authorized to act does not prevent the master from being liable if the time or place is not too remote from that authorized and comes within the general purposes of the employer." The evidence was sufficient to authorize a finding for the plaintiff and the court erred in granting a nonsuit.

The above opinion is written on a rehearing of this case. The judgment of reversal is adhered to.

*Judgment reversed. Felton, J., concurs.*

Sutton, J., dissenting. The test in determining whether an act is done in the scope of the servant's employment, for which the master would be liable, "is not that the act of the servant was done during the *existence* of the employment,—that is to say, during the time covered by the employment,—but whether it was done in the prosecution of the master's business; whether the servant was *at that time* engaged in serving his master, for, if the servant steps aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended, and the servant alone is responsible for his act committed by him during this period." (Italics mine.) *L. & N. Railroad Co.* v. *Hudson,* 10 *Ga. App.* 169, 172 (73 S. E. 30) ; *Plumer* v. *Southern Bell Telephone &c. Co.,* 58 *Ga. App.* 622, 627 (199 S. E. 353). Where the plaintiff brought an action against the defendant to recover damages because of the alleged unjustifiable assault upon him by its bus driver, and solely

on the ground that at the time of the assault the servant was acting in the prosecution of the master's business and in the scope of his employment, but where the evidence conclusively showed that in assaulting the plaintiff the bus driver was engaged in an act wholly personal to himself, the gratification of his anger and resentment at the conduct of the plaintiff, and not in an act in the scope of his employment with the master, the court did not err in granting a nonsuit. *Daniel* v. *Excelsior Auto Co.,* 31 *Ga. App.* 621 (121 S. E. 692); *Atlanta Coca-Cola Bottling Co.* v. *Brown,* 46 *Ga. App.* 451 (167 S. E. 776); *Heath* v. *Atlanta Beer Dist. Co.,* 56 *Ga. App.* 494 (193 S. E. 73); *Plumer* v. *Southern Bell Telephone &c. Co.,* supra; *Broome* v. *Primrose Tapestry Mills,* 59 *Ga. App.* 70 (200 S. E. 506); *Georgia Railroad & Banking Co.* v. *Wood,* 94 *Ga.* 124 (21 S. E. 288); *Henderson* v. *Nolting First Mortgage Corporation,* 184 *Ga.* 724 (193 S. E. 347).

I dissent from the judgment of reversal, and am of the opinion that the trial court properly granted a nonsuit.