GEORGIA POWER COMPANY *v.* SHIPP.

No. 14352. MARCH 9, 1943.

Certiorari; from Court of Appeals. 67 *Ga. App.* 867.

*MacDougald, Troutman & Arkwright* and *William H. Schroder,* for plaintiff in error.

*Walter A. Sims* and *Ralph G. Sims,* contra.

REID, Chief Justice. Certiorari was granted in this case, because of the application by the Court of Appeals of a public statute (Code § 68-308) to a personal-injury case growing out of an assault by the driver of a public bus upon a person with whose automobile it was alleged the bus had just previously collided. The facts of the case are stated in the opinion of the Court of Appeals, 67 *Ga. App.* 867 (21 S. E. 2d, 458). The case will be decided on the rulings as made by the Court of Appeals, without regard to the somewhat technical distinctions which might arise in such a case as this from principles ruled in *Kelly* v. *Strouse,* 116 *Ga.* 872 (1, 2, 4, 5) (43 S. E. 280). The Court of Appeals ruled on the broad question whether under the pleadings and the evidence the plaintiff was entitled to recover, and our decision will be so limited. The majority opinion treating the question in that way, applying the provisions of the Code, § 68-308, held that the trial court erred in granting nonsuit. This section provides: "In case of accident to any person or damage to any property upon the public street or highway, due to the operation of a motor vehicle, tractor, or trailer thereon, the operator of such machine shall immediately stop, and, upon request of the person injured or sustaining damage thereby, or of any other person present, give such person his name and address, and if he is not the owner of such vehicle, then in addition the name and address of the owner thereof, and further he shall render such assistance as may be reasonable or necessary." The Court of Appeals held: "Whether it is implied in this section that it is not applicable to the operator of a motor vehicle along a public street, who is not cognizant of his being the cause of damage to person or property, it certainly is within the contemplation of the statute that a person who suffers damage, either to his person or property, due to the operation of a motor

vehicle on a street or highway of this State, has the right, when he is damaged by the operation of such motor vehicle, to obtain from the operator thereof the information referred to in the statute, if the operator is aware of the fact that such damage has been inflicted by him in the operation of the motor vehicle. If the person damaged or injured is entitled to the right to obtain this information from the operator of the motor vehicle causing the damage, he certainly has the right, if the operator is not aware of the infliction of the damage, to inform the operator thereof. It is therefore incumbent upon an operator of a motor vehicle along a public street or highway of this State, in the operation of such motor vehicle as a common carrier, not only to stop his vehicle on the occurrence of an accident or infliction of damage by him in the operation of his motor vehicle, where he is cognizant thereof, but 'upon request of the person injured or sustaining damage thereby . . give such person his name and address,' and that of the owner. It follows as a corollary that it is within the duties of the operator of the motor vehicle, as the servant of his employer, where he has caused damage to person or property on a highway, and is not cognizant thereof, to receive and accept notice of such damage from the person damaged."

The application of the statute is tantamount to a holding that any infraction thereof by an employee, resulting in injury or damage to another, would render the employer liable for such employee's act, without regard to the rule that for such liability to exist the employee shall be engaged in the master's business and be acting within the scope of his employment. Without any effort to examine the circumstances under which an employer might be bound by the conduct of his employee, which conduct also violates this statute, let us measure that in the present case, and see if the enactment of this law changes the rule respecting the liability of a master for the torts of a servant. The inquiry on that precise question would seem to be as to whether the statute is operative on the master or the servant, on the employer or the employee. The statute is a penal one. The Code, § 68-9908, provides that "Any person violating the provisions of Chapters 68-1 to 68-4, relating to licenses, registration, and operation of motor vehicles, shall be deemed guilty of a misdemeanor." The General Assembly of this State, as did the legislative bodies of several sister States,

recognizing that the public, with the advent and influx of automobiles, was confronted with the growing evil of the so-called hit-and-run driver, sought by the enactment of this statute to curtail this menace; and with the knowledge that the bulk of travel over the streets and highways of the State consisted in the use of motor vehicles in the pursuit of trade and commerce, and knowing that for the most part such motor vehicles of necessity were operated by employers through servant chauffeurs and drivers, it was necessary to provide legislation that would bring to account with the law the offenders in this practice. Consequently the enactment of this statute resulted. Its violation was made a crime, and as written the penalty is assessed only against the operator, without reference to the owner of the vehicle involved or the employer of the driver, as the case may be. "Unless otherwise provided, such a statute applies only to the operator of the motor vehicle, and does not create any liability on the part of the owner who is not the operator; if, however, the owner is present and the vehicle is being operated under his control, he is liable for non-compliance with the statute, unless the operator disobeys his instructions." 42 C. J. 385, § 1450. The provisions of a statute similar to that under consideration were invoked in a civil action for the death of a boy struck by a truck, in the case of Nager v. Reid, 240 Mass. 211 (133 N. E. 98), where it was held: "Section 24 of G. L. c. 90, making it a criminal offense for the driver of an automobile to go away without stopping and making known his name, residence, and the number of his vehicle, after knowingly causing injury to a person, relates only to the operator, and does not create any liability, criminal or civil, on the part of an owner who is not the operator." In our investigation we have examined Battle v. Kilcrease, 54 Ga. App. 808 (189 S. E. 573), and, without regard to the soundness of certain statements made in division two of the opinion in that case, we do not consider that the rulings there made are applicable to facts such as here presented. We do not think that the statute under consideration as related to the present case has in any manner changed the well-recognized standard or test for determining the master's liability for the act of the servant, which is again recognized and set out in the dissenting opinion of Sutton, J., in the instant case, as follows: "The test in determining whether an act is done in the scope of the servant's employment, for which the

master would be liable, 'is not that the act of the servant was done during the *existence* of the employment,—that is to say, during the time covered by the employment,—but whether it was done in the prosecution of the master's business; whether the servant was *at that time* engaged in serving his master; for if the servant steps aside from his master's business, for however short a time, to do an act not connected with such business, the relation of master and servant is for the time suspended, and the servant alone is responsible for his act committed by him during this period.' " Citing *L. & N. Railroad Co.* v. *Hudson, Plumer* v. *Southern Bell Telephone &c. Co.,* supra. The general rule stated above was not changed by the statute under discussion.

Upon this premise we proceed to an examination of the correctness of the trial judge's action denying the plaintiff any right to recover. " 'A master is liable for the wilful torts of his servant, committed in the course of the servant's employment, just as though the master had himself committed them. This rule applies as well where the master is a corporation as where he is a private individual.' *Central of Ga. Ry. Co.* v. *Brown,* 113 *Ga.* 414, 416, 417 (38 S. E. 989, 84 Am. St. R. 250); Civil Code (1910), § 4413 [105-108]; *Savannah Elec. Co.* v. *Wheeler,* 128 *Ga.* 550, 554, 555 (58 S. E. 38, 10 L. R. A. (N. S.) 1176); *Mason* v. *Nashville &c. Ry.,* 135 *Ga.* 741, 756, 757 (70 S. E. 225, 33 L. R. A. (N. S.) 280); *Century Bldg. Co.* v. *Lewkowitz,* 1 *Ga. App.* 636, 637 (57 S. E. 1036). But 'if a servant steps aside from his master's business, for however short a time, to do an act entirely disconnected from it, and injury results to another from such independent voluntary act, the servant may be liable, but the master is not liable.' " *Daniel* v. *Excelsior Auto Co.,* 31 *Ga. App.* 621, 623 (121 S. E. 692). Citing *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470, 471, 472 (65 S. E. 322). In the present case the evidence adduced upon the trial by the plaintiff made no stronger case than the pleadings alleged. There was a general averment of agency that the bus operator "was in the employ of the defendant corporation and was acting for and on behalf of said corporation at the times herein specified." The plaintiff testified: "The bus which collided with me was a Georgia Power Company bus. The driver wore a uniform operators regularly wear,—with buttons on them with 'G. P. Co.' on them, and cap which operators of both

street-cars and buses wear. These buses operate regularly on this line, before and since this happening. The number of the bus which struck my automobile was No. 118. I learned since the operator's name was Tudder." There was other evidence to the effect that the bus was a Georgia Power Company bus, and that the driver thereof committed the assault complained of. This constitutes all the evidence produced and relied upon by the plaintiff to identify his assailant as the employee of defendant, and to establish the relationship of master and servant between the defendant and this alleged employee. If the present action had been one for recovery of damages to the plaintiff's automobile by reason of the collision referred to in the petition, the plaintiff at most would barely be entitled to a holding that this evidence establishes prima. facie that the driver was the employee of defendant, using the bus in the prosecution of the business of the defendant and within the scope of his employment. See, in this connection, *Yellow Cab Co.* v. *Nelson,* 35 *Ga. App.* 694 (134 S. E. 822). The evidence further disclosed in detail a series of events leading to the occurrence complained of. At Forrest Avenue and Piedmont Avenue, which point was one block distant from the place where it was alleged the bus struck the automobile, the plaintiff sought to inform the bus operator of this fact of which he must have been unaware, and according to the plaintiff he "hollered at the driver and told him he had hit my fender. He looked at me, then turned and looked off and didn't pay any attention to me. I thought may be he didn't understand what I said, and when the light changed he pulled off and turned to the left, north on Piedmont." At Currier Street, a block north of Forrest Avenue, the bus stopped, the plaintiff stopped his automobile adjacent to the bus on the left side, the driver got out of the bus and went to the left side of the plaintiff's automobile, where the assault was made. According to the plaintiff's evidence there was no exchange of words between him and the driver, but the driver did, while passing in front of plaintiff's car, greet him with the remark, "What the hell is the matter with you; are you drunk?" The plaintiff further testified that he did not notice any passengers getting on or off the bus at the time the driver left, and that during the course of the encounter the plaintiff informed the driver that he was a cripple; whereupon the driver stated that he (meaning the plaintiff) would

be a damned sight more crippled when he got through with him than he was then. Considering the evidence as to the manner of the assault, the attendant circumstances, the statements of the driver preliminary to and during the course of the encounter, together with the testimony of the plaintiff that he "thought may be he didn't understand what I said," having reference to his effort at Forrest and Piedmont Avenues to inform the driver of the collision, we think it is inferable the driver of the bus did not know of the collision and had become aroused over the conduct of the plaintiff, thinking probably that the plaintiff was attempting to harass him, and then proceeded to take matters into his own hands. He stopped the bus, not for the purpose of taking on or discharging passengers or pursuing the business of his master, but for the purpose, so well expressed by Sutton, J., in his dissent, of engaging "in an act wholly personal to himself, the gratification of his anger and resentment at the conduct of the plaintiff, and not in an act in the scope of his employment with the master. . ." Nor does it matter if his anger or resentment arose by reason of a misunderstanding of the conduct of the plaintiff. The fact remains that in disembarking from the bus and going out into the street to the automobile of the plaintiff, to do an act wholly personal to himself and in which his master had no interest, he deserted his post of duty and stepped aside from his master's business, and the relation of master and servant was for that period suspended.

The following rule as to the liability of the master for damages arising from an assault and battery committed by the servant is laid down in 39 C. J. 1306, § 1506: "Applying the doctrine of respondeat superior especially in its application to cases of willful, wanton, and malicious injury, a master is liable to a third person on whom an assault and battery is wrongfully made by his servants while acting within the scope of their employment, that is, whenever the nature of the employment authorizes the servant to use force, and he improperly exercises such authority against a person who is not in fault, or uses more force than the circumstances of the case require." The same principle is stated in 18 R. C. L. 207, § 263, as follows: "The liability of an employer for an assault and battery committed by an employee is to be determined with a view to the character of the business conducted. If the assault can be said to have been within the scope of the employment, the

employer will be held liable; but if the employee's act was foreign to the service in which he was engaged, the employer will not be held accountable." In Plotkin *v.* Northland Transportation Co., 204 Minn. 422 (283 N. W. 758), the driver of defendant's bus had difficulty in passing the car of plaintiff; and after succeeding in passing, the bus stopped at a crossing, where its driver walked back to the plaintiff's car, stopped at the crossing, and following an exchange of words about the plaintiff's failure to let the bus pass, the driver struck the plaintiff. The court in the majority opinion, in affirming a dismissal of the case, said: "It is not enough to make liability for the master that a battery by his servant would not have occurred except for the employment. The employment must be something more than mere occasion for the fracas. 'It surely can not be true that because the master has entrusted to a servant the performance of a duty, the master can be held responsible for whatever method the servant may adopt in attempting to perform it.'" Citing 2 Mechem, Agency (2d ed.), § 1978. In the opinion it was said: "It is not sufficient that the battery is due to anger arising from performance of the servant's duties, Brown *v.* Boston Ice Co., 178 Mass. 108, 59 N. E. 644, 86 Am. St. Rep. 469; or that the battery may advance or be intended to advance the master's interests. Morin *v.* People's Wet Wash Laundry Co., 85 N. H. 122, 156 A. 499; Rudgeair *v.* Reading Traction Co., 180 Pa. 333, 36 A. 859 (facts similar to the instant case except that the person battered by defendant's motorman was at the very moment blocking the advance of defendant's street car). . . If defendant's bus driver, in passing plaintiff's car on the road, had run into it intentionally or negligently, defendant might have been liable as for a tort committed by its servant in the course of his employment. That result would not follow, however, if after a collision on the highway and after both cars had come to rest, the bus driver had done as he did here and had assaulted plaintiff to satisfy anger arising from a past occurrence and not at all in furtherance of defendant's interest in having its bus keep on schedule."

In further support of its ruling the Court of Appeals cited as being analogous to the present case two illustrations from 1 Restatement of the Law of Agency, 550, § 245 as follows: "A is employed by P as the driver of an ice wagon. While A is delivering ice, a number of children annoy him by endeavoring to get

pieces of ice. A throws a piece of ice at one of them in order to expedite his work. The fact that he also hopes to cause pain to the child and thereby get revenge for the annoyances does not prevent the act from being within the scope of employment." In the second illustration "A is employed to drive P's automobile. As T, a competitor, is passing the car which A is driving, A deliberately drives into T's car, doing this to prevent T from passing and also because A does not like T. This act may be found to be within the scope of A's employment." The principles outlined in these illustrations are not in point with the case under consideration. In each of these instances it will be observed that the servant, at the time of committing the assault, was actually engaged in furtherance of his master's business. In the first illustration the driver in throwing the ice was in the act of warding off would-be trespassers and protecting the property of his employer. The act of throwing the ice and the act of protecting the property were one and the same and were coexistent. A similar differentiation would likewise apply to the second illustration. There the act of A in deliberately driving into T's car may be found to be within the scope of A's employment because he was seeking to curtail competition to the interest of his employer. We cite another illustration from this treatise, found in the same section and volume as those above quoted, as follows: "A is employed as a truck driver for P. While so employed he gets into an altercation with T, a rival truck-driver, over precedence at a crossing. Having acquired precedence, A then leaves his truck and assaults T. Upon these facts alone, the act of A is not within the scope of employment." It seems to us this illustration is more analogous in principle to the present case than either of those cited by the Court of Appeals, and is in line with former decisions of this court. A different result might have been required had A, as in the second illustration referred to in the opinion of the Court of Appeals, driven into the truck of T while attempting to gain precedence. But if, after having acquired precedence, he then left his truck to commit an assault on T, a departure from the master's business is shown.

Deciding, as we do, that the provisions of the Code, § 68-308, are inapplicable to this case, it is clear that the evidence failed to present any question for determination by the jury. *Georgia Rail-*

*road &c. Co.* v. *Wood,* 94 *Ga.* 124 (21 S. E. 288, 47 Am. St. R. 146) ; *L. & N. R. Co.* v. *Hudson,* supra; *Plumer* v. *Southern Bell Telephone Co.,* supra; *Atlanta Coca-Cola Bottling Co.* v. *Brown,* 46 *Ga. App.* 451 (167 S. E. 776) ; *Heath* v. *Atlanta Beer Distributing Co.,* 56 *Ga. App.* 494 (193 S. E. 73) ; *Broome* v. *Primrose Tapestry Mills,* 59 *Ga. App.* 70 (200 S. E. 288) ; *Savannah Electric Co.* v. *Hodges,* 6 *Ga. App.* 470 (65 S. E. 322) ; *Henderson* v. *Nolting First Mortgage Corporation,* 184 *Ga.* 724 (193 S. E. 347). In virtue of the foregoing rulings and the views here expressed, the Court of Appeals erred, and the trial court correctly ordered a nonsuit.

*Judgment reversed. All the Justices concur, except Bell, P. J., and Jenkins, J., who dissent.*